**In re GRAND JURY.**

**No. M–85–31–L.**

United States District Court, D. New Hampshire.

June 7, 1985.

Steven M. Gordon, Shaheen, Capiello, Stein & Gordon, Concord, N.H., for John Boeckeler.

Office of the U.S. Atty., for the Government.

## ORDER ON MOTION TO QUASH

LOUGHLIN, District Judge.

The statement of facts incorporated in U.S.A.'s memorandum of law in opposition to motion to quash is reasonably accurate and thus is incorporated in this order.

On or about March 20, 1984, John Wallace sought the advice and representation of Attorney John Boeckeler; Attorney Boeckeler on two occasions, in the first instance a year prior to these Grand Jury proceedings, and more recently when Mr. Wallace was subpoenaed by the Grand Jury.

In the course of representing Mr. Wallace, Attorney Boeckeler interviewed witness John Doe, and made a contemporaneous memorandum of that conversation. Attorney Boeckeler spoke with the witness, John Doe, concerning the grand jury matter, at the request of John Wallace. Mr. Wallace sent John Doe to Attorney Boeckeler so his statement could be taken by Wallace's Attorney. Subsequent to the interviewing of the witness, John Wallace waived his attorney-client privilege.

The Grand Jury issued a subpoena to Attorney Boeckeler commanding him to bring to the Grand Jury his "[c]lient folder for John Wallace, including but not limited to any and all original notes of consultations, memoranda of interviews of Mr. Wallace or witnesses, or any other statements of Mr. Wallace or witness." Attorney Boeckeler has moved to quash the subpoena on the grounds that it requires him to divulge material protected by the work-product doctrine.

John Wallace, through counsel as far as this court is concerned has waived the attorney-client privilege. *Sleeper v. Abbott,* 60 N.H. 162, *USA v. Strahl,* 590 F.2d 10 (1st Cir.1978). See exhibit 1.

While the court over the government's objection held an on the record, in camera hearing with Attorneys Gordon and Boeckeler present, nothing earth shattering was revealed or came of it, but the record can speak for itself if the case is appealed.

### Work Product Doctrine

The work product doctrine had its genesis in a civil action. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), but it has since been held to apply to criminal cases where it is "even more vital" to ensure the proper functioning of the criminal justice system. *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *In re Special September, 1978 Grand Jury,* 640 F.2d 49, 61 (7th Cir.1980). The work product doctrine has been extended to grand jury proceedings. *In re Grand Jury Proceedings,* 473 F.2d 840, 845 (8th Cir.1973); see also, *United States v. Nobles,* 422 U.S. 225, 247 n. 6, 95 S.Ct. 2160, 2174 n. 6, 45 L.Ed.2d 141 (1975) (White J. concurring).

The work product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles, supra,* 422 U.S. at 238 n. 11, 95 S.Ct. at 2170, 45 L.Ed.2d 141 (1975), citing *Hickman v. Taylor, supra.* Although only confidential communications between the attorney and client are protected by the attorney-client privilege, the work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney. Further, the attorney-client privilege belongs to the client alone while the work product doctrine may be asserted by either the client or the attorney. *In Re Grand Jury Proceedings,* 604 F.2d 798

(3rd Cir.1979); *In re Special September 1978 Grand Jury, supra* at 62.

At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. *United States v. Nobles,* 422 U.S. at 238, 95 S.Ct. at 2170. The work product doctrine is reflected in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. *Hickman v. Taylor,* 329 U.S. at 510–11, 67 S.Ct. at 393–94.

The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted. *Id.* at 512, 67 S.Ct. at 394.

The court conducted an in camera hearing to determine if the files of Attorney Boeckeler are protected by this doctrine. It is clear that the notes taken during the interview of John Doe are comprised of Attorney Boeckler's reduction of John Doe's oral responses to skilled questions posed by Attorney Boeckeler. The conditions of the interview may bring Attorney Boeckler's notes within the protection of the work product doctrine. See, *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *American Standard, Inc. v. Bendix Corp.,* 71 F.R.D. 443 (W.D.Mo.1976); *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397 (E.D.Va.1975).

The situation at bar poses a relatively unique situation. Attorney Boeckeler's client, John Wallace has waived his attorney-client privilege, yet Attorney Boeckeler insists these files are still protected by his work product privilege. The work product doctrine is an independent source of immunity from discovery, separate and distinct from the attorney-client privilege. *Vilastor-Kent Theater Corp v. Brandt,* 19 F.R.D. 522, 524 (S.D.N.Y.1956). Therefore, defendant's waiver of the attorney-client privilege does not necessarily mean that the protection afforded by the work product doctrine is also breached. *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976). Where it is the attorney who asserts the work product doctrine, the policy in favor of insulating the attorney's work product for the sake of the attorney must be weighed against the policy which favors disclosure. *In re Special Grand Jury, September, 1978,* 640 F.2d at 63. Before this court engages in the examination of whether the notes are in fact work product or opinion work product, it must consider the possibility of an attorney-client privilege existing between Attorney Boeckeler and John Doe. For this purpose, the court grants John Doe's motion to intervene.

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Upjohn v. United States, supra,* 449 U.S., at 389, 101 S.Ct. at 682.

"The guiding principle in determining whether or not there exists a privileged attorney-client relationship is the intent of the client. The key question in determining the existence of a privileged communication is "whether the client reasonably understood the conference to be confidential." McCormick on Evidence, § 91 at 189 (1972). See also H.J. Drinker, Legal Ethics, 135 (1953) (communication remains privileged where "third party was present in such capacity as to be identified with the client"); *Hearn v. Rhay,* 68 F.R.D. 574, 579

258

(E.D.Wash.1975) (intent of the party is determinative). The law in this circuit also looks to the intent of the client. In *United States v. Bigos*, 459 F.2d 639 (1st Cir.1972), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972), we held that an inviolate and privileged communication existed where an indicted defendant's father was present with him at the consultation with his attorney: "While we agree that the presence of a third party commonly destroys the privilege, it does so only insofar as it is indicative of the intent of the parties that their communication not be confidential." Id. at 643." *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir.1984).

■ It is generally accepted that the purpose of the attorney-client privilege is threefold: (1) to encourage free discussion by the client; (2) to relieve the attorney of the onus of determining on a good faith basis whether a communication is privileged, *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, at 570–71 (2nd Cir.1973); and (3) to deter the advertent or inadvertent use of privileged communications to the advantage or disadvantage of a new client. *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, at 135 (2nd Cir.1976).

The privilege belongs to and may be waived only by the former client; the attorney may not terminate the privilege unilaterally. DR4–101(B)(1); A. Weinstein & M. Berger, Weinstein's Evidence § 503(c)[01] (1982). *Kevlik, supra* at 849–50.

■ After examining the affidavit in support of John Doe's motion to intervene, it is evident that John Doe believed that Attorney John Boeckler was representing both his interests and those of Mr. Wallace. John Doe does not waive his attorney-client privilege. His interview with Attorney Boeckeler clearly falls within this privilege. The case at bar involves an overlapping of the attorney-client privilege and the work product doctrine, based on the existing attorney-client privilege between John Doe and Attorney Boeckler; the Grand Jury Subpoena must be quashed.