The POTOMAC ELECTRIC POWER
COMPANY, Plaintiff,

v.

CALIFORNIA UNION INSURANCE
CO., et al., Defendants.

Civ. A. No. 88–2091.

United States District Court,
District of Columbia.

Feb. 14, 1990.

Arnold M. Weiner, Hazel, Thomas, Fiske,
Weiner, Beckhorn & Hanes, P.C., Balti-
more, Md., for plaintiff.

Michael Nussbaum and Jeffrey D. Robinson, Nussbaum & Wald, Washington, D.C., for defendant American Centennial.

Dennis M. Flannery, William S. Blackmer, and Thomas B. Smith, Wilmer, Cutler & Pickering, Washington, D.C., for defendant California Union Ins.

Thomas S. Schaufelberger and Timothy C. Russell, Drinker, Biddle & Reath, Washington, D.C., for defendant Empl. Ins. of Wausau.

Mark S. Landman, Ignatius J. Melito, and Stephen V. Kovarik, Siff, Rosen & Parker, P.C., New York City, for defendant First State Ins.

Donald S. Schwinn, Barry R. Poretz, and Laura N. Steel, Jordan, Coyne, Savits & Lopata, Washington, D.C., for defendant Nat. Union Fire.

Michael Nussbaum and Jeffrey Robinson, Nussbaum & Wald, Washington, D.C., for defendant North River Ins. Co.

Joseph S. Crociata, Gilberg & Kurent, Washington, D.C., for defendant Southern American Ins.

Michael Nussbaum, Nussbaum & Wald, Washington, D.C. and Thomas J. Quinn, Mary Ann D'Amato, and John Spadaro, Mendes & Mount, New York City, for defendant Underwriters/Lloyd's.

## ORDER

JOHN H. PRATT, District Judge.

Since the Fall of 1989, the parties have besieged this Court with six motions to compel. Currently ripe are the last five, four of which require resolution on the merits. Given the deluge of related pleadings we have received, we are tempted to leave the parties to their own resources. Nevertheless, we now address the remaining motions at some length, with the expectation that our discourse will discourage another flood of papers in connection with motions for reconsideration.[1]

### I. Pepco's Motions to Compel Against Wausau, First State, and National Union

Pepco, in separate motions, has moved to compel defendants Wausau, First State, and National Union to provide information relating to: (1) communications between these defendants and their reinsurers for the policies that defendants issued to Pepco; and (2) third party claims involving pollutants that act similarly to PCBs when spilled on the ground. For the reasons explained below, we hold that Pepco is not entitled to discovery in the first area, but may conduct limited discovery in the second.

### A. Communications With Reinsurers

■ Rule 26(b)(2) authorizes "discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed.R.Civ.P. 26(b)(2). Thus, the "existence and contents of" defendants' reinsurance policies on the Pepco policies are discoverable.

Defendants assert, however, that correspondence or other documents relating to reinsurance agreements which Pepco seeks do not fall within the purview of Rule 26(b)(2). We agree, and moreover find that, quite apart from Rule 26(b)(2), the information Pepco seeks is neither relevant nor "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Pepco demands discovery of "communications which occurred at or around the time" the reinsurance policies were obtained. Pl.Reply Mem. in Supp. of Mot. Against First State and Nat'l Union at 12.[2]

---

1. We have literally been inundated with paper in this case. When last seen, the docket entries totaled 220 and took up more than 20 pages, even though the case is still in discovery. That this is an abuse of the process is an understatement.

2. Pepco's original request was broader, and although Pepco technically has not limited its request with respect to Wausau, Pepco's motion against Wausau is indistinguishable from its motion against the other defendants. Therefore, the Court reads Pepco's narrowed request as applying to Wausau as well.

Pepco baldly asserts that it "is entitled to know what, if anything, [defendants] told their reinsurers[,] at the time they applied for reinsurance[,] about the terms and conditions of the policies they issued to Pepco, and about their knowledge of Pepco and Pepco's operations." *Id.* Pepco speculates that the correspondence might contain valuable admissions against defendants.

This Court has broad discretion to limit discovery under Rule 26(b)(1). *See, e.g., In re Sealed Case,* 856 F.2d 268, 271 (D.C.Cir. 1988); *In re Multi–Piece Rim Products Liability Litigation,* 653 F.2d 671, 679 (D.C.Cir.1981). After carefully examining defendants' answers to the complaint, we conclude that the correspondence—if it exists—lacks sufficient indicia of relevance. This Court will not authorize a fishing expedition. In addition, the correspondence may well constitute proprietary information or be protected by the attorney-client privilege or the work product doctrine. Therefore, the discovery Pepco seeks does not appear "reasonably calculated to lead to the discovery of admissible evidence." In light of these considerations, we hold that defendants need not provide Pepco with correspondence relating to these reinsurance agreements.

### B. *Third Party Claims*

■ On the other hand, we hold that Pepco is entitled to *limited* discovery in this area. *See Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 117 F.R.D. 283, 286–87 (D.D.C.1986); *Carey Canada, Inc. v. California Union Insurance Co.,* 118 F.R.D. 242, 243–46 (D.D. C.1986). Defendants shall provide information on third party claims that were either litigated or ultimately paid, and which were filed under similar policies [3] for incidents of PCB contamination that occurred during the effective dates of Pepco's policies with defendants.[4]

Defendants, aside from objections on the grounds of undue burden and relevance, assert generally that some third party claim information may be protected by the work product doctrine or the attorney-client privilege. We hold that defendants may redact the names of third party insureds from any information they provide. In addition, the precise terms of any settlements need not be disclosed.[5] As for any remaining claims of privilege, the Court agrees with Pepco that the proper procedure is for defendants to compile a privilege log.

### II. *National Union's Motion to Compel Against Pepco*

National Union seeks an order compelling Pepco to answer its First Set of Interrogatories Nos. 9, 25, 26, 27, and 28 more fully. It bases its motion largely on Pepco's alleged failure to comply with the procedures for responding to interrogatories outlined under Rule 33. While technically Pepco may not have adhered to these procedures, we are at a loss to discern how its noncompliance in any way prejudiced National Union. The Court's time should not be spent on futile exercises. National Union also claims that Pepco's responses are substantively insufficient. We disagree. In light of the massive amount of discovery that has already taken place in this case, we find that Pepco has provided National Union with adequate responses, both in form and in substance, to the interrogatories in question.[6] Under these circum-

---

3. By similar policies, we mean either first (Wausau) or second (First State and National Union) layer excess comprehensive general liability coverage containing language similar to that found in the Pepco policies.

4. Accordingly, First State and Wausau need only provide third party claim information for PCB contaminations that occurred during the period from October 31, 1981, through October 31, 1982. The operative period for National Union runs from March 1, 1980, through March 1, 1981.

5. Pepco "is not interested in the details of ... settlements, but only in whether [defendants] admitted coverage and/or paid any substantial amounts." Pl.Rep.Mem. in Supp. of Mot. Against First State and Nat'l Union at 11. Pepco agrees that the protective order dated October 23, 1989, will govern Pepco's disclosure of confidential information.

6. In each instance, National Union "has had ample opportunity," by alternative means, "to obtain the information sought." Fed.R.Civ.P. 26(b)(1). With a discovery deadline of February 28, 1990, fast approaching, National Union

stances, National Union's continued reliance on the requirements of Rule 33 is without merit.

### III. *Defendants' Joint Motion to Compel Against Pepco*

■ After defendants filed this motion, the parties resolved some of the issues it addressed. The remaining issues are: (1) whether Pepco must produce documents, including those on its privilege lists, pertaining to its investigation, defense, and settlement of the underlying criminal and civil proceedings for which it seeks insurance coverage; (2) whether Pepco must produce unredacted copies of legal bills reviewed by attorneys Michael Schatzow and George Mernick in preparation for their depositions; and (3) whether Pepco must state affirmatively that all responsive documents have been identified. The second and third issues may be dealt with summarily. Pepco must, consistent with our Orders filed November 6, 1989, and January 5, 1990, produce all documents reviewed by Messrs. Schatzow and Mernick in preparation for their depositions. Additionally, we agree with defendants that Pepco's privilege logs imply that Pepco's document production may be incomplete. In order to eliminate any doubt, we shall require Pepco to inform defendants of whether any documents responsive to defendants' discovery requests have not been identified. If Pepco has not yet identified all responsive documents, it shall promptly produce any remaining documents or, if it believes a privilege attaches to any document, identify such document by way of a privilege log.

As to documents pertaining to Pepco's investigation, defense, and settlement of the underlying proceedings, we are persuaded that equity and the case law weigh in favor of production. These documents are clearly relevant. The insurance policies at issue indemnify Pepco for "ultimate net loss" within the coverage terms and conditions, including reasonable defense costs relating to an insured loss. Defendants deny that the PCB contamination is an insured loss and deny that Pepco has satisfied various conditions to coverage under the policies. In addition, assuming that the PCB contamination is an insured loss, defendants disclaim liability for certain costs related to the underlying proceedings. Thus, Pepco's conduct and the apportionment of costs in connection with the investigation, defense, and settlement of the underlying proceedings are directly at issue in this case.

■ Plaintiff argues that the documents are protected by the attorney-client privilege or the work product doctrine. We disagree. It is clear that Pepco has brought its own conduct and the conduct of its counsel in the underlying proceedings directly into issue by instituting this action to recover approximately $3.25 million for clean-up costs and $3.5 million for defense costs allegedly incurred in connection with those proceedings. Under these circumstances, defendants are entitled to inspect documents pertaining to the underlying proceedings, regardless of whether they contain attorney work product or communications normally protected by the attorney-client privilege. *See Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C.1983) (privilege waived where information defendant sought was "necessary to resolve the precise ... issue ... plaintiff ha[d] interjected into the case"); *Charlotte Motor Speedway, Inc. v. International Insurance Co.*, 125 F.R.D. 127, 129–31 (M.D.N.C.1989) (information concerning counsel's activities was necessary to determine whether insured met its obligations under the policy and whether settlement terms and defense costs were reasonable); *see also* 6 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 26.64[3.–2], at 26–385

has had access to numerous knowledgeable witnesses by way of depositions, and Pepco has produced at least hundreds of thousands of documents in response to defendants' interrogatories and document requests. Moreover, National Union has entertained unrealistic expectations concerning the responses Pepco is capable of providing. For example, National Union has demanded an itemization of legal services that attaches a dollar figure to each service rendered. Counsel for National Union should be aware that law firms typically do not bill their clients in this manner. After carefully examining all of the relevant papers, we are satisfied that Pepco has done the best it can to provide the requested information.

(2d ed. 1986). Defendants must be allowed the opportunity to substantiate several defenses they have raised. For these reasons, their motion to compel is granted.

### IV. *Pepco's Motion to Compel Against North River, London Market, and American Centennial*

Fortunately, this motion was rendered moot when defendants filed responses to Pepco's second set of interrogatories on December 15, 1989. Accordingly, we now dismiss it.

### *Conclusion*

We have carefully evaluated all of the arguments made in support of and in opposition to each of the four motions that required resolution on the merits. Any argument not expressly addressed above is hereby rejected as without merit.

Accordingly, for all of the foregoing reasons, it is by the Court this 13th day of February, 1990,

ORDERED that plaintiff's motions to compel against defendants Wausau, First State, and National Union are granted in part and denied in part; it is

ORDERED that, within forty-five (45) days of the date of this Order, defendants Wausau, First State, and National Union shall provide plaintiff with previously requested information on third party claims that were either litigated or ultimately paid, and which were filed under similar policies for incidents of PCB contamination that occurred during the effective dates of Pepco's policies with said defendants, it being understood that the names of third party insureds and the precise terms of any settlements need not be disclosed; it is

ORDERED that defendant National Union's motion to compel against plaintiff concerning answers to National Union's First Set of Interrogatories Nos. 9, 25, 26, 27, and 28 is denied; it is

ORDERED that defendants' joint motion to compel against plaintiff is granted; it is

ORDERED that plaintiff shall, within ten (10) days of the date of this Order, produce for inspection all previously withheld documents that were reviewed by Messrs. Schatzow and Mernick in preparation for their depositions; it is

ORDERED that plaintiff shall, within fifteen (15) days of the date of this Order, inform defendants in writing of whether any documents responsive to defendants' discovery requests have not been identified, it being understood that any responsive documents that have not been identified shall be produced for inspection or identified in a privilege log within fifteen (15) days of the date of this Order; it is

ORDERED that, within fifteen (15) days of the date of this Order, plaintiff shall produce for inspection all documents, including those on plaintiff's privilege lists, pertaining to plaintiff's investigation, defense, and settlement of the underlying proceedings for which plaintiff seeks insurance coverage in this action; and it is

FURTHER ORDERED that plaintiff's motion to compel against defendants North River, London Market, and American Centennial is dismissed as moot.