**VERMONT GAS SYSTEMS, INC., Plaintiff,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Employer's Surplus Lines Insurance Company, St. Paul Surplus Lines Insurance Company and Associated Electric & Gas Insurance Services, Ltd., Defendants.**

**Civ. A. File No. 90–121.**

United States District Court, D. Vermont.

Sept. 14, 1993.

270

Leo A. Bisson, Jr. and Bruce C. Palmer,
Downs Rachlin & Martin, St. Johnsbury, VT,
for plaintiff.

Allan R. Keyes, Ryan Smith & Carbine, Ltd., Rutland, VT, for defendant U.S. Fidelity & Guar. Co.

Samuel Hoar, Jr. and Philip C. Woodward, Dinse, Erdmann & Clapp, Burlington, VT, for defendant Employer's Surplus Lines Ins. Co.

Peter B. Joslin, Theriault & Joslin, P.C., Montpelier, VT, for defendant St. Paul Surplus Lines Ins. Co.

Alan Rutkin, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, NY, for defendant Associated Elec. & Gas Ins. Services, Ltd.

## OPINION AND ORDER

PARKER, Chief Judge.

Plaintiff Vermont Gas Systems ("VGS") brought a declaratory judgment action, pursuant to Title 28 U.S.C. § 2201 and Fed. R.Civ.P. 57, against defendants United States Fidelity & Guaranty Company ("USF & G"), Employer's Surplus Lines Insurance Company ("ESLIC"), St. Paul Surplus Lines Insurance Company ("St. Paul") and Associated Electric & Gas Insurance Services ("AEGIS"). Plaintiff seeks to establish and enforce defendants' duty to defend and indemnify it regarding claims by the Environmental Protection Agency (EPA) and other third parties that VGS is responsible for damages and costs associated with the Pine Street Canal Superfund Site ("Site") and its cleanup, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA").

*Background*

Plaintiff filed a motion for partial summary judgment seeking to resolve solely the initial duty of USF & G to defend it. (Paper 77) Subsequent to the filing of that motion, in April 1992, this Court entered a Case Management Order ("April CMO") which imposed a moratorium on any further discovery until this Court issued an opinion on the motion for partial summary judgment or the EPA finalized the Remedial Investigation and Feasibility Study ("RI/FS"). The April CMO also provided that

the Court will not hear or decide any motion which is dispositive of this action and is based on a claim that the plaintiff failed to afford timely notice of an occurrence, claim or suit to any of the Defendants under the terms of insurance policies issued by the Defendants to the Plaintiff. (Paper 93). At the time the April CMO was entered, in addition to VGS' motion for partial summary judgment, AEGIS and St. Paul had motions for summary judgment pending. (Paper 65 and 68) Those motions claimed that the policies issued to VGS by AEGIS and St. Paul did not provide coverage because the pollution at the Site was apparent before the inception of those policies. VGS filed a memorandum opposing summary judgment, which was followed by a number of reply briefs from the respective parties. Those motions remain pending.

Subsequent to the April CMO, but before this court decided plaintiff's motion for partial summary judgment, ESLIC filed a motion for judgment on the pleadings (Paper 97) and a motion for summary judgment (Paper 98). These were closely followed by AEGIS' second motion for summary judgment. Both AEGIS and ESLIC claimed that their motions should be granted because VGS failed to provide timely notice of a claim, a condition precedent for coverage under the policies. VGS moved to stay both motions as they were in contravention of the April CMO. All those motions remain pending.

In an October 1992 Opinion and Order, this Court granted plaintiff's motion for partial summary judgment holding that as long as the possibility of coverage exists, an insurer has an initial duty to defend claims against the insured. *Vermont Gas Systems, Inc. v. United States Fidelity & Guaranty Company*, 805 F.Supp. 227, 233 (D.Vt.1992). This Court held that if the insured failed to provide timely notice of the claims for which it seeks coverage, as required by the governing policy, coverage would be forfeited without regard to whether such failure to notify prejudiced the insurers but declined to address that issue as it was a fact-specific inquiry beyond the scope of the motion for partial summary judgment. *Id.* at 232–233.

Subsequent to this Court's granting the partial motion for summary judgment, an amended Case Management Order ("December CMO") was entered by this Court in December 1992. The December CMO allowed for some limited discovery and motion practice, specifically providing for depositions of aged or infirm persons, requests for admissions and motion practice pertaining to written discovery already served. The December CMO provided that within thirty days of issuance of the preliminary Record of Decision ("ROD") or June 1, 1993, the parties would meet to discuss settlement and chart the course of future proceedings. The limitation that this Court would not hear or decide any dispositive motions based on the lack of timely notice remained in force.

Since that time, as a result of comments it received from state and local governments and the public, the EPA abandoned its proposed remedy for the Site in favor of a further period of study and a new proposed remedy. This in turn has delayed the issuance of the expected ROD.

■ Accordingly, as of June 1, 1993 consideration of the three pending summary judgment motions was no longer limited by the December CMO. Also currently pending before this Court is a motion to compel production of documents filed by AEGIS, the result of a discovery dispute between VGS and AEGIS over the confidentiality of certain documents. (Paper 127) And most recently, all parties save AEGIS have filed a stipulated motion for stay of action and discovery. (Paper 138) The motion petitions the Court to enter an amended CMO which would stay all further proceedings in the case until the first of the following events occurs: (1) EPA issues a preliminary ROD and supplemental RI/FS; (2) EPA and VGS enter into a consent decree which includes VGS as a party and finally determines its liability for future remediation and costs at the Site; (3) all parties submit and the Court enters a stipulated discovery schedule; or (4) July 1, 1995.

As I noted in the October Opinion and Order, resolution of the fundamental issue in this action—whether or not VGS failed to provide timely notice of the claims against it and whether any circumstances exist which might excuse such a failure, if any—is a fact-specific inquiry which awaits further development. The stipulated motion expresses the belief of the parties that the settlement of this action is likely once the amount of VGS' exposure is definitively established by the eventual remedy selected by EPA for the Site. Rather than engage in costly discovery and motions practice, I believe that the proposed amended CMO best serves the interests of economy and efficiency for the Court, the parties and counsel as to the fundamental issue in this case. Therefore, the motion for stay of action and discovery will be granted and an amended CMO entered.

As to the pending motions, the motions of ESLIC (Papers 97 and 98) and AEGIS (Paper 105) were inconsistent with the April CMO's directive that this Court would not hear or decide any dispositive motion based on a claim that VGS failed to provide timely notice. Accordingly, they should not remain pending and will be dismissed without prejudice. The parties will be free to refile such motions at the appropriate time under the amended CMO to be entered by this Court.

However, this Court also believes that AEGIS' first motion for summary judgment is ripe for consideration, as is the motion to compel. The parties have briefed the Court extensively and neither discovery nor oral argument is necessary to dispose of these motions. Accordingly they will be dealt with below.

*Discussion*

*I. Motion for Summary Judgment*

■ "Summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). On a motion for summary judgment, the Court must determine whether factual issues exist that justify a trial. The Court does not resolve factual disputes. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in those cases where the nonmoving party has failed to produce any evidence of a genuine issue as to any material fact, and the moving party

has rested his motion on a valid legal theory that entitles him to judgment as a matter of law. Fed.R.Civ.P. 56(c). Substantive law guides the Court in determining what facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities and reasonable inferences are resolved in favor of the nonmoving party. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ In their motions for summary judgment, AEGIS and St. Paul argue that as a matter of law, if pollution is apparent before the inception of an insurance policy, there can be no coverage under that policy for claims related to that pollution. They claim that the pollution which is the source of VGS's potential liability was apparent to VGS by at least 1982. Because their insurance policies were not issued to VGS until after 1982,[1] the movants claim that as a matter of law, those policies do not cover claims arising from the pollution apparent before 1982. The movants argue that there is no genuine issue of material fact as to when the pollution became apparent based on the admissions of VGS, the record before this Court and a March 1982 letter from EPA to VGS.

To support this claim, movants cite *Village of Morrisville Water & Light Dep't v. United States Fidelity & Guar. Co.*, 775 F.Supp. 718 (D.Vt.1991) (Coffrin, J) (hereinafter "*Morrisville*"). Movants claim that *Morrisville* stands for the proposition that an insurance policy does not apply to pollution that was apparent before the insurance policy incepts in the context of a dispute concerning environmental cleanup.

This Court does not necessarily agree with this interpretation of *Morrisville*. In *Morrisville*, an insured sought an injunction and a declaratory judgment stating that its insurance company must defend and indemnify it for claims concerning the clean-up of a site to which it had shipped polychlorinated biphenyls ("PCBs") for disposal. The insurer claimed that the policies did not provide coverage because:

(A) CERCLA clean-up costs are not "damages,"; (B) no "property damage" took place at the site; (C) no "occurrence" was triggered; (D) the EPA's letter to Morrisville is not a "suit"; and (E) public policy precludes coverage for the massive costs associated with CERCLA.

*Id.* at 724. After concluding that CERCLA clean-up costs are damages within the meaning and scope of the policies and that property damage had occurred at the site, Judge Coffrin concluded that the improper disposal of the insured's PCBs constituted an occurrence. *Id.* at 725–29.

Judge Coffrin then turned to see "whether the 'occurrence' happened between [the period covered by the policies]." *Id.* at 730. In doing so he surveyed the five different rules used by courts to determine if an "occurrence" was triggered during a policy period. Contrary to the movants' suggestion, the determination hinged on when *damage* occurred or was apparent, not when pollution was apparent. Thus, as a matter of law, *Morrisville* does not stand for the proposition that an insurance policy does not apply to *pollution* that was apparent before the coverage incepted.

Even if it were clear that *Morrisville* did stand for such a proposition [2], summary judg-

---

1. AEGIS issued a policy providing excess insurance to VGS which incepted in November 1984. St. Paul issued two excess liability policies covering the period between October 31, 1982 to October 31, 1984.

2. The five different rules discussed by Judge Coffrin were:

(1) The Exposure Rule—damage occurs when the environment is first exposed to the toxic chemical; i.e. when the toxin is deposited in the landfill.

(2) The Manifestation Rule—damage occurs when it becomes apparent to the injured party;

i.e. damage occurs when the EPA or private owner discovers that toxic waste has leaked onto the soil or into the groundwater.

(3) The Double Trigger Rule—damage occurs when the environment is first exposed to the toxic chemical and at the time the damage becomes apparent to the injured party.

(4) The Triple or Continuous Trigger Rule—damage occurs when the environment is first exposed to the toxic chemical, at the time the damage first becomes apparent, and at all times in between.

(5) The Actual Injury Rule—damage occurs when the property is actually harmed by the

ment would still be inappropriate as there is a genuine issue of material fact. The movants' argument that VGS was aware of pollution by 1982 is premised on the same set of facts which underlie what all parties have acknowledged to be the central issue to this litigation—when VGS was aware of its liability arising from its involvement with the Site and whether it has forfeited coverage because it failed to provide its insurers with timely notice. All the insurers have joined in arguing that VGS was aware of its potential liability by at least March 5, 1982, the date of an EPA Letter notifying VGS that the EPA was considering undertaking response actions at the Site and that VGS "may be a responsible party." VGS contends that it was reasonable to determine at the time of the 1982 EPA Letter and afterwards that the 1982 Letter and attendant circumstances did not constitute a suit or claim requiring it to provide timely notice to its insurers. In this motion for summary judgment, both the movants and VGS make the same arguments as to whether pollution was apparent and this Court's response is the same—this is a fact-specific inquiry and still presents a genuine issue in this case. As such summary judgment is inappropriate.

## II. Motion to Compel

AEGIS has moved to compel the production of documents in the possession of VGS. The documents at issue number 186, a small portion of the massive number of documents VGS has already produced to AEGIS and its other insurance carriers. VGS supplied AEGIS and its other carriers with a Privileged Documents Log which provided the date, author, recipient and subject for each document it withheld, as well as whether it was withholding that document on the basis of attorney-client privilege or work product doc-

trine, or both. AEGIS seeks these documents because "they relate to issues at the core of this litigation."

■ Discovery rules are to be applied broadly. *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir.1992). However, "according the discovery rules liberal treatment does not license opposing counsel to discover anything and everything." *Id.* Rule 26(b)(1)[3] of the Federal Rules of Civil Procedure provides for discovery of any relevant matter that is not privileged. VGS invokes two long-recognized privileges, attorney-client and work product, in regard to the documents at issue. AEGIS claims that VGS has failed to establish its claims that the contested documents are privileged documents. Even if this Court were to conclude that the attorney-client privilege and work product claims were valid, AEGIS argues that the contested documents would remain discoverable.

### A. Attorney–Client Privilege

■ "The attorney-client privilege protects '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance.'" *In re Grand Jury Subpoenas*, 959 F.2d 1158, 1165 (2d Cir.1992) (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)); *see also United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989), *cert. denied*, —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991) (The attorney-client privilege prohibits an attorney from revealing confidential communications that pass in the course of professional employment from client to lawyer). Vermont law, which applies in this diversity action, limits the attorney-client privilege to "confidential communications" between a client and his attorney or their representa-

---

toxic chemical, but the damage does not have to be apparent because symptoms may manifest themselves well after the injury occurs. *Morrisville*, 775 F.Supp. at 730–31 (footnotes omitted).

**3.** Fed.R.Civ.P. 26(b)(1) states in applicable part: Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action whether it relates to the claim or defense of the party seeking discovery or to the claim or

defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

tives "made for the purpose of facilitating the rendition of professional legal services to the client."[4] The burden is on the party invoking the protection of the attorney-client privilege to establish those facts that are the elements of the privileged relationship. *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987).

■ A review of the privileged documents log makes it clear that the documents at issue relate to the EPA claims against VGS and date back to the initial involvement of VGS' counsel. Of the 186 documents at issue, 41 are claimed privileged solely on the basis of the attorney-client privilege.[5] These documents are all communications between VGS and its counsel and it is clear to this Court that they are all connected to the rendition of legal services surrounding the Site and any liability anticipated by VGS. As such, they ordinarily would be privileged from discovery. Fed.R.Civ.P. 26(b)(3).

**B.** *Work Product Privilege*

■ "The work product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975) (citing *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). First, "[a]lthough only confidential communications between the attorney and client are protected by the attorney-client privilege, the work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney." *In re Grand Jury*, 106 F.R.D. 255, 256 (D.N.H.1985). Second, while the attorney-client privilege belongs only to the client, either the client or the attorney may assert the work product privilege. *Id.; see also Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 930 (N.D.Cal.1976).

■ The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.[6] The rule sets forth three requirements to assert work product privilege: "The materials must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party [to the action], or by or for his representative." *In re Grand Jury Subpoenas Dated Dec. 18, 1981 and January 4, 1982*, 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982).

■ All documents VGS claims is work product save numbers 1—7 were prepared after the EPA's request for information was received by VGS in May 1987. Those first seven documents cannot be said to have been prepared in anticipation of litigation and should therefore be subject to discovery. However, the remaining documents are of the type historically covered by work product protection. *See Hickman*, 329 U.S. at 511, 67 S.Ct. at 394 (The work product of a lawyer is reflected in interviews,

---

**4.** Vt.R.Evid. 502(b) is the applicable law and reads as follows:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer, or a representative of the lawyer to a lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

**5.** Those documents, as they have been numbered, are: 102, 113, 115, 124–126, 128–129, 134, 136,

138, 142–145, 149, 153–157, 160–165, 167–170, 172–176, 178–179, 183 and 185–186.

**6.** Fed.R.Civ.P. 26(b)(3) provides in pertinent part:

[A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

statements, *memoranda, correspondence, briefs,* mental impressions and personal beliefs) (emphasis added).[7] Second, the documents were created after receipt of the May 1987 letter by VGS and clearly in anticipation of litigation concerning the Site.[8] Third, the documents were prepared by or for VGS or by or for Downs, Rachlin & Martin, VGS' present attorney. "Rule 26(b)(3) applies to protect work product materials prepared [by or] for a party's representative, 'such as an attorney.'" *Niagara Mohawk Power Corporation v. Stone & Webster Engineering Corporation,* 125 F.R.D. 578, 586 (N.D.N.Y.1989) (quoting *Sprague v. Director of Office of Worker's Compensation,* 688 F.2d 862, 870 (1st Cir.1982)). Clearly, the documents at issue constitute privileged work product.

## C. *Waiver of the Privileges*

AEGIS claims that despite this Court's finding that substantially all of the documents at issue are privileged under either the attorney-client or work product doctrines, the documents are still subject to discovery under two theories. The first stands for the proposition that where information has been put "at issue" by a party, any otherwise applicable privilege is overridden. The second theory, known as the "common interest" doctrine, permits insurers to discover material relating to the underlying claim that would otherwise be subject to attorney-client privilege or work product protection.

### (1) "At Issue" doctrine

▮▮▮▮▮▮ The "at issue" doctrine "stems from traditional notions of waiver. By taking an action that places privileged information 'at issue' the party may forfeit the privilege." *Remington Arms Co. v. Liberty Mu-*

tual Ins. Co., 142 F.R.D. 408, 412 (D.Del. 1992). However, the scope of such a waiver is uncertain and varies according to the nature of the information "at issue." AEGIS relies heavily on *Potomac Elect. Power Co. v. California Union Ins. Co.,* 136 F.R.D. 1 (D.D.C.1990) to support the proposition that a plaintiff seeking insurance coverage for underlying claims waives attorney-client privilege and work product protection as to documents relevant to their conduct and the conduct of their counsel.

*Potomac* involved a dispute concerning the amount of settlement and litigation costs already incurred by an insured before it brought suit to recoup those costs against its insurance carriers. In *Potomac,* the plaintiff was sued as a result of PCB contamination it was allegedly responsible for. Before it brought suit against its insureds, it reached a settlement of the PCB claims for approximately $3.25 million in clean-up costs, allegedly incurring $3.5 million for defense costs in the underlying proceedings. The insurers balked at indemnifying and reimbursing the insured and litigation ensued. The district court held that the insured's "conduct and the apportionment of costs in connection with the investigation, defense, and settlement of the underlying proceedings are directly at issue in this case." *Potomac,* 136 F.R.D. at 4. Because the insured brought its own conduct and the conduct of its counsel in the underlying proceedings into issue, the district court held that the insurers were "entitled to inspect documents pertaining to the underlying proceedings, regardless of whether they contain attorney work product or communications normally protected by the attorney-client privilege." *Id.*

---

**7.** The Court in *Hickman* went on to state that "[w]ere such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own." *Id.* at 511, 67 S.Ct. at 394.

**8.** The fact that the documents were prepared in anticipation of litigation with the EPA and not specifically with VGS' insurers is not dispositive. Work product protection applies to materials prepared for an earlier action, where the actions are related. 4 J. Moore, J. Lucas & G. Grotheer,

*Moore's Federal Practice* ¶ 26.64[2] (2d ed. 1989); *see also F.T.C. v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) (Fed.R.Civ.P. 26(b)(3) "protects materials prepared for *any* litigation or trial"); *Hercules Inc. v. Exxon Corporation,* 434 F.Supp. 136, 153 (D.Del.1977) ("[D]ocuments prepared for one case have the same protection in a second case where the two cases are closely related in parties or subject matter"). Here, the actions are unquestionably related.

In contrast, the central issue in this case is whether VGS forfeited coverage under its various insurance policies by failing to provide its insurers with timely notice. Neither the costs incurred by VGS nor its strategy in responding to the EPA's claims against it are at issue. What is at issue is whether VGS should have notified its insurers that there was a claim or suit pending against it as a result of the March 1982 Letter. Almost all the documents at issue post date that March 1982 letter by at least 5 years. No waiver of attorney-client or work product protection can be implied solely because VGS initiated this declaratory judgment action. *See Remington Arms,* 142 F.R.D. at 416; *NL Industries, Inc. v. Commercial Union Insurance Company,* 144 F.R.D. 225, 232–233 (D.N.J. 1992).[9]

(2) "Common Interest" doctrine

■■■■ Pursuant to the common interest doctrine, "communications between an insured and its attorney connected with the defense of an underlying litigation are normally not privileged vis-a-vis the insured's carriers in subsequent litigation." *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.,* 654 F.Supp. 1334, 1365 (D.D.C. 1986). AEGIS claims that the common interest it shares with VGS in defeating the underlying claims should allow it to discover material relating to that underlying claim.

■■■■ This Court disagrees with the broad scope AEGIS gives the common interest doctrine. It is true that documents may *"normally* not [be] privileged," but where there is an adversarial relationship between an insured and insurer as to whether coverage exists, the parties have never shared the same counsel or litigation strategy and the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties, a common interest, at this time, does not exist beyond the formal designations of insured and insurer. *See Remington Arms,* 142 F.R.D. at 418; *Carey–Canada, Inc. v.*

*Aetna Casualty & Surety Co.,* 118 F.R.D. 250, 251 (D.D.C.1987). Accordingly, the common interest doctrine does not provide an exception to the protection afforded the documents at issue by the attorney-client privilege and the work product doctrine.

D. *Compelling Need*

■■■■ The work product privilege is not absolute. *In re Grand Jury Subpoenas,* 959 F.2d at 1166. Disclosure of protected documents will be compelled in restricted circumstances. *Id.* Rule 26(b)(3) permits disclosure of work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship. Fed. R.Civ.P. 26(b)(3). The burden rests on the party seeking disclosure to make the requisite showing. *In Re Grand Jury,* 106 F.R.D. at 257.

After a thorough review of the documents in the Privileged Documents Log prepared by VGS, this Court remains unconvinced that there is a substantial need for the documents at issue and that it will be unable to obtain the equivalent information without hardship.

Accordingly, after reviewing the privileged documents log as submitted by AEGIS and the memoranda of the parties, this Court is of the opinion that VGS has met its burden in demonstrating that the majority of documents it seeks to withhold from discovery are indeed protected under either the attorney-client privilege or the work product doctrine. As discussed above, only documents numbered 1–7 in the Privileged Documents Log are not protected under either theory and therefore must be produced by VGS. All other documents shall not be subject to discovery.

*Conclusion*

In accordance with this Opinion a new Case Management Order will be entered by this Court based on the joint stipulation of VGS, USF & G, ESLIC and St. Paul. Further, AEGIS' first motion for summary judgment (Paper 65) and its motion to compel

---

**9.** However, if VGS attempts to prove by means of the documents at issue that it was not required to notify its insurers of potential exposure as a result of the March 1982 Letter or that there were circumstances which would excuse a delay in providing notice, that may constitute a waiver. *United States v. Nobles,* 422 U.S. 225, 239 n. 14, 95 S.Ct. 2160, 2170 n. 14, 45 L.Ed.2d 141.

(Paper 127) are DENIED for the reasons discussed above. ESLIC's motions for judgment on the pleadings (Paper 97) and summary judgment (Paper 98) and AEGIS' second motion for summary judgment are DISMISSED without prejudice as they were inconsistent with the prior April CMO. VGS' motions in response (Papers 102 and 110) are DISMISSED as Moot.