Agnes, Peter W., J.
I. INTRODUCTION
This matter is before the court on plaintiff Neles-Jamesbury, Inc.’s (“NJI”) motion to compel production of documents from the defendants (Paper no. 82). The plaintiff is seeking access to reinsurance agreements between the defendants and others who are not parties in the context of a civil suit over insurance coverage for asbestos-based claims. The plaintiff maintains that the defendant insurers are jointly and severally liable for payment of damages and reasonable defense costs in connection with lawsuits brought against the plaintiff by individuals claiming asbestos-related injuries. NJI maintains that access to these agreements will be of assistance to it in trying to identify other potential defendants. This is not a subject that our appellate courts have previously addressed. However, the parties have cited numerous decisions by federal courts based on the language of Fed.R.Civ.P. 26(a)(1)(D) which is identical to Mass.RCiv.P. 26(b)(2). Therefore, this court will look to those decisions for guidance.
II. BACKGROUND
This is an insurance coverage action in which plaintiff alleges that the defendant insurers are obligated to defend and indemnify NJI against underlying claims arising from NJI’s alleged manufacture and sale of asbestos-containing products. Initially, plaintiff sued three insurers. Two of the insurers, Liberty Mutual Insurance Company (“Liberty”) and Employers Insurance Company of Wausau (“Wausau”) settled with NJI. Prior to that settlement the court had dismissed several policies because those policies appeared to contain an asbestos exclusion or because no insurance policy was issued. Three defendants remain in this case. Those three are Lumbermens Mutual Insurance Company (“Lumbermens”), Centuiy Indemnify Company (“Centuiy”) and St. Paul Fire and Marine Insurance Company (“St. Paul”).
The plaintiffs discoveiy motion seeks to compel defendant Lumbermens to produce all documents responsive to the plaintiffs Document Request, dated July 17, 2007. Plaintiff claims that the discovery is necessary to establish the liability of the insurance company, and adds that it also is relevant because Lumbermens has publicly expressed concerns raising the potential that it may become insolvent. Lumbermens denies that they are insolvent and asserts that the failure to pay plaintiff up to this point has been the result of the unreasonableness of the demands of the plaintiff and limitation of coverage under the policy itself. Lumbermens also claims that they have paid, and continue to pay, a share of the plaintiffs defense costs. Additionally, Lumbermens claims that plaintiff seeks reimbursement of costs *314 prior to the time plaintiff notified Lumbermens, which costs Lumbermens is not responsible for.
III. DISCUSSION
A. Reinsurance Agreement is an “Insurance Agreement" under Rule 26
The defendant claims that reinsurance agreements are not insurance agreements, and therefore are not discoverable under Rule 26(b)(2). The rule provides that a party is obliged to provide other parties with “any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.” Mass.R.Civ.P. 26(b)(2). The majority of federal courts to have considered the questions raised by the plaintiffs discovery request recognize the difference between reinsurance agreements and other types of communications between the insurers and their reinsurers. See U.S. Fire Ins. Co. v. Bunge North America, Inc., 2007 WL 1531846, *5 n.3 (D.Kansas 2007) (collecting cases). See Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., 2005 WL 3690565 (C.D.Ill); Tardiff v. Knox County, 224 F.R.D. 522, 523 (D.Me. 2004); Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc., 2002 WL 1870452 (E.D.Pa. 2002); Missouri Pac. R.R. Co. v. Aetna Cas. & Sur Co., 1995 WL 861147 (N.D.Tex. 1995); Great Lakes Dredge and Dock Co. v. Commercial Union Assur. Co., 159 F.R.D. 502, 504 (N.D.Ill. 1995); Potomac Elc. Power v. California Union Ins. Co., 136 F.R.D. 1 (D.D.C. 1990). These cases reason that reinsurance agreements are simply agreements between parties who each happen to be insurers. As the Bunge court noted, “(r)emsurers (’persons carrying on an insurance business’) are insurers own insurers.” Id.
For example, in National Union Fire Insurance Co. v. Continental Illinois Corporation, 116 F.R.D. 78, 83-86 (N.D.Ill., 1987), insurers sued to rescind liability policies that were issued to defendant. Insured sought discovery regarding pre- and post-issuance communication between insurers and reinsurers and their reinsurance agreements. Insurers claimed that the information was irrelevant, and would be unduly burdensome to produce. The court found that the reinsurance communications might contain or lead to the discovery of relevant evidence and, therefore, met the relevancy threshold under Fed.R.Civ.P. 26(a)(1)(D). “It is totally irrelevant that the reinsurers would pay Insurers and not the defendants and that Movants cannot directly sue the reinsurers.” Bunge, 2007 WL 1531846, *5-6. In this regard it is useful to consider the observation made in the Reporter’s Notes to Mass.R.Civ.P. 26(b)(2): “Rule 26 explicitly permits the discovery of the existence and contents of an insurance agreement where such insurance may be the basis for satisfaction of the judgment either directly or by way of indemnity." Thus, cases cited by the defendants that turn on the fact that the underlying insured is not a party to a reinsurance agreement and that such agreements are merely indemnification agreements between two insurers do not alter the basic rule that they are discoverable. See Defendant’s Memorandum in Opposition at 2.
The defendant relies on Catholic Mutual Relief Society v. Superior Court, 2007 WL 2412234 (California Supreme Court August 27, 2007). In that case, the liability insurer whose reinsurance information was being sought was not a party to the action. Id. at 366. The court interpreted a California statute regarding discovery of reinsurance policies and stated that discovery solely for the purpose of determining the availability of funds for settlement is not allowed. Id. In that case, the plaintiffs sought discovery to determine the funds available for settlement proceedings, and not for any other purpose. The court stated that discovery for the purpose of finding relevant admissible evidence would be allowed. Id. at 368. Where the reinsurance agreement is directly relevant to the issue at hand, it may be discoverable. Id. at 369. If this court were to apply the California Supreme Court’s holding in this case, the decision would be in favor of the plaintiffs. The areas of dispute in this case relate directly to the language of the policies and the time of notice. Relevant evidence may be gathered from reinsurance agreements that may resolve these disputes.
B. Reinsurance Agreements May But Do Not Necessarily Contain Confidential and Proprietary Information
The insurers claim that the reinsurance agreements are confidential and proprietary. Insurers in United States Fire Insurance also claimed that reinsurance agreements were confidential and proprietary. United State Fire Insurance, 2007 WL 1531846 at 6. The court did not agree. Id. This court recognizes the desire of insurers and reinsurers to keep the documents at issue confidential. However, this court agrees with the court in United State Fire Insurance that this issue can be solved with a less onerous solution. A protective order can be issued to ensure that the lawyers for all parties do not use the reinsurance information for anything other than the purposes directly related to this legal proceeding. This solution provides for the safety of the information insurers wish to protect while granting the discovery of potentially relevant information that could result in admissible evidence.
The defendant cites The Potomac Electric Power Co. v. California Union Ins. Co., 136 F.R.D. 1 (D.D.C. 1990), in support of its confidential and proprietary claim. In that case, the plaintiffs sought discovery relating to reinsurance policies. The court stated in that case that reinsurance “correspondence may well constitute proprietary information or be protected by the attorney-client privilege or the work product doctrine.” Id. at 3 (emphasis added). The court did not inquire into the factual background or conclude that *315 the information was proprietary. Instead, the court made its decision based on the fact that in that particular case, the reinsurance information was not relevant. The court determined that the discovery request was not more than a fishing expedition. Id.
On the record before the court, there are grounds to believe that the discovery sought by the plaintiff may lead to the discovery of admissible evidence regarding the disputed questions of fact in this case. It is also this court’s view that such discovery may aid the parties in coming to an agreement beneficial to all. While some courts have stated that the possibility of settlement alone is not a valid reason to grant such a discovery motion, it is an important consideration that this court should consider throughout the pretrial stage.
CONCLUSION
For the foregoing reasons, plaintiff Neles-Jamesbury’s motion to compel production of documents is hereby ALLOWED. Out of an abundance of caution, discovery shall be made under the terms of a PROTECTIVE ORDER requiring attorneys to maintain as confidential and for use solely in this case the contents of all reinsurance agreements provided by a party or a non-party until further order of the court.