[No. S134545. Aug. 27, 2007.]

CATHOLIC MUTUAL RELIEF SOCIETY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
ROMAN CATHOLIC ARCHDIOCESE OF SAN DIEGO et al., Real Parties
in Interest.

## COUNSEL

Borton, Petrini & Conron, Rocky K. Copley, Jonathan P. Geen and Paul Kissel for Petitioners.

Hancock Rothert & Bunshoft, Paul J. Killion, Heidi H. Frenzel, Kathryn C. Ashton and Allegra A. Jones for Certain Underwriters at Lloyd's, London and Certain London Market Insurance and Reinsurance Companies as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Kiesel Boucher & Larson, Raymond P. Boucher, Patrick DeBlase and Anthony M. DeMarco for Real Parties in Interest.

OPINION

BAXTER, J.—

## INTRODUCTION

In this case we must determine whether Code of Civil Procedure section 2017.210,[1] the statutory provision authorizing limited discovery of a defendant's insurance coverage information, authorizes pretrial discovery of a nonparty liability insurer's *reinsurance* agreements for purposes of facilitating settlement of an underlying tort action. We conclude that it does not.

As will further be explained, there may be unusual circumstances in which a reinsurance agreement is functioning in the same way as a liability policy ("fronting" arrangement), or where the reinsurance agreement is itself the subject matter of the litigation at hand (e.g., coverage action between liability insurer and its reinsurer). In such instances, discovery of such agreements would be appropriate. In this matter, however, there is no evidence that any reinsurance agreements for which pretrial discovery was being sought fall within those narrow exceptions.

The judgment of the Court of Appeal, which interpreted section 2017.210 consistently with the views expressed herein, shall accordingly be affirmed.

## FACTS AND PROCEDURAL BACKGROUND

The Roman Catholic Archdiocese of San Diego is the principal defendant in an action brought by approximately 140 persons (plaintiffs) for alleged childhood abuse by certain priests. Those cases, along with others involving the San Bernardino Archdiocese, are known collectively as *Clergy Cases II*, and were coordinated within the Los Angeles County Superior Court with claims against dioceses from other parts of California.

In September 2003, pursuant to a stipulated order regarding settlement and mediation proceedings, the trial court issued an initial case management order which, among other things, directed the Roman Catholic Archdiocese of San Diego (Church) to turn over copies of all insurance policies that might provide coverage for plaintiffs' claims. Petitioner Catholic Mutual Relief

---

[1] All further undesignated section references are to the Code of Civil Procedure. Former section 2017, subdivisions (a) and (b) shall be referred to as former sections 2017(a) and 2017(b), respectively. Shortly after the Court of Appeal filed its opinion in this case, former sections 2017(a) and 2017(b) were repealed and reenacted without substantive change as sections 2017.010 (former § 2017(a)) and 2017.210 (former § 2017(b)). (Stats. 2004, ch. 182, §§ 22, 23.) We shall hereafter refer to the new code sections.

Society is a nonprofit corporation that administers a self-insurance fund for more than 300 archdioceses and other Catholic Church entities in the United States and Canada, including the San Diego Archdiocese. The Catholic Mutual Relief Society is not an insurance company, but its wholly owned subsidiary, petitioner Catholic Relief Insurance Company of America, is the Church's liability insurer.[2]

In compliance with the case management order, the Church produced copies of its liability insurance policies issued by petitioners. Plaintiffs contended this information was insufficient. According to plaintiffs, they also need to know whether petitioners were financially sound enough to cover their policy obligations. In April 2004, in an attempt to resolve the matter informally, the trial court allowed plaintiffs to serve on petitioners a series of "interrogatories" aimed at obtaining the desired information.[3] Petitioners objected to those questions on grounds that (1) the questions sought information concerning their financial condition, reserves, and reinsurance agreements, none of which was relevant for discovery purposes or was otherwise nondiscoverable; (2) much of the material sought was privileged; (3) the requests were overbroad and ambiguous; and (4) the trial court lacked authority to require interrogatory responses from nonparty insurers.

On May 6, 2004, the settlement judge issued an order permitting plaintiffs to serve deposition subpoenas on petitioners in an attempt to secure the information requested by plaintiffs' "interrogatories." The subpoenas sought broad categories of financial documents, including a request for all writings reflecting the total amount of funds available from *reinsurance* "to satisfy any defense expenses or indemnify losses in connection with sexual abuse claims against the [Church]."[4]

---

[2] The Court of Appeal referred to the Catholic Mutual Relief Society and Catholic Relief Insurance Company of America collectively as petitioners. We shall do the same.

[3] The questions, which the parties have denominated as "interrogatories," formed the basis for the deposition subpoenas here in issue. Since the questions were directed to nonparties, they were technically not interrogatories. In any event, the deposition subpoenas and the questions on which they were based were nearly identical.

[4] The deposition subpoena requests sought: "1. All writings pertaining to the financial relationship between [the Relief Society and Relief Insurer] with respect to financial responsibility for sexual abuse claims brought against the [Church]; [¶] 2. All writings pertaining to the total amount of funds available to satisfy any defense expenses or indemnify losses in connection with sexual abuse claims against the [Church], whether from reserves, policyholder surplus, *reinsurance*, or other available sources of funding; [¶] 3. All writings evidencing the number of sexual abuse claims that have been filed against policyholders affiliated with the Catholic church and the total amount of damages sought by these claims; [¶] 4. All writings evidencing the annual amount over the past five years of defense costs and indemnity payments incurred in connection with sexual abuse claims against policyholders affiliated with the Catholic church; [¶] 5. All writings evidencing the amount in reserves that have been set for sexual abuse claims against the [Church] by [petitioners]; [¶] 6. All writings evidencing the

Petitioners moved to quash the subpoenas, arguing that to the extent the document requests sought information about the overall strength of petitioners' financial condition, they were not reasonably calculated to lead to the discovery of admissible evidence and were therefore beyond the permissible scope of discovery. The settlement judge denied the motions to quash, finding that the subpoena requests—aimed at determining whether petitioners were financially able to pay any judgment that might be entered against their insured—were "clearly relevant and discoverable" to inform and facilitate settlement.

Petitioners sought a writ of mandate from the Court of Appeal to vacate the settlement judge's order. The Court of Appeal granted relief, concluding the documents and information sought were not discoverable under either the general statutory discovery provision (§ 2017.010) or the specific provision authorizing limited discovery of insurance information as a matter of right (§ 2017.210). The court found that "section [2017.210] was intended to reach only a defendant's [direct] insurer, not that insurer's reinsurance agreements."[5]

We granted review of the issue framed by plaintiffs as follows: "Whether the long-standing California rule that 'has permitted discovery of the existence and extent of liability insurance' (*Laddon v. Superior Court* (1959) 167 Cal.App.2d 391, 394–395 [334 P.2d 638]) allows discovery of reinsurance information that is critical to determine the 'nature and limits' of coverage that may be available to satisfy a judgment as set forth in California Code of Civil Procedure section [2017.210]."

---

total indemnity reserves, total defense and expense reserves, and total incurred but not reported reserves for sexual abuse claims against the [Church] by [petitioners]; [¶] 7. All writings evidencing the amount in reserves that has been set for sexual abuse claims against all policyholders affiliated with the Catholic church; [¶] 8. All writings evidencing the totals for indemnity reserves, defense and expense reserves, and incurred but not reported reserves for sexual abuse claims against all policyholders affiliated with the Catholic church; [¶] 9. All writings pertaining to *reinsurance* available to [petitioners] to satisfy defense or indemnify costs arising from the sexual abuse claims brought against the [Church]; [¶] 10. All writings pertaining to the most recent balance sheets, financial statements, or other financial filings with insurance regulators." (Italics added.)

[5] The matter became moot with respect to these parties after the cause was submitted in the Court of Appeal and plaintiffs thereafter informed that court that the settlement judge had issued an ex parte order allowing plaintiffs to withdraw the disputed discovery requests and vacating his earlier order denying petitioners' motions to quash the deposition subpoenas. Plaintiffs sought to dismiss the appeal, petitioners opposed the request. The Court of Appeal found the appeal was not moot because the issues are likely to recur, either among these parties or the many others involved in these consolidated proceedings; and because the issues are of broad public interest. (See *Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144 [18 Cal.Rptr.3d 417].) We agreed and granted review.

## DISCUSSION

Plaintiffs sought broad pretrial discovery of financial information regarding the assets and overall financial health of petitioners' insurance operations. Petitioners are not parties to the consolidated actions below. The information requested included total funds and reserves available to settle claims, satisfy judgments, and indemnify defense expenses in connection with sexual abuse claims brought against the Catholic Church and its numerous dioceses nationwide. The information was sought for the exclusive purpose of informing and facilitating pretrial settlement of the 140 such claims brought against the Roman Catholic Archdiocese of San Diego in the consolidated litigation.

■ In this state pretrial discovery in a civil action is governed by the Civil Discovery Act. (§ 2016.010 et seq. (former § 2016 et seq.).) As a general matter, information is discoverable if it is relevant to the subject matter of an action and, additionally, is either admissible in evidence or reasonably calculated to lead to the discovery of admissible evidence. (§ 2017.010.) The Court of Appeal concluded none of the broad financial information sought from these nonparty insurers[6] in connection with potential settlement of the underlying sexual abuse claims was relevant or discoverable on a showing of good cause under section 2017.010. Plaintiffs have not challenged that aspect of the Court of Appeal's holding on review. Instead, plaintiffs sought review only of the specific question whether section 2017.210, which authorizes limited discovery of a defendant's liability insurance coverage as a matter of right, likewise authorizes discovery of the nonparty liability insurer's *reinsurance* agreements, assertedly for purposes of facilitating pretrial settlement of underlying tort claims.

■ Evidence of a tort defendant's liability insurance is generally unrelated to a party's claims or defenses at trial; hence the common law rule has long been that such insurance coverage evidence is inadmissible at trial. (*Laddon v. Superior Court, supra,* 167 Cal.App.2d 391, 396 (*Laddon*); *Pettie v. Superior Court* (1960) 178 Cal.App.2d 680, 690 [3 Cal.Rptr. 267] (*Pettie*).) The rule is codified in Evidence Code section 1155, which provides that "[e]vidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or other wrongdoing."

■ Section 2017.210 nonetheless creates a statutory exception that allows limited discovery of a defendant's liability insurance coverage as a matter of

---

[6] The permissible scope of discovery in general is not as broad with respect to nonparties as it is with respect to parties. (See *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1289 [93 Cal.Rptr.2d 619].)

right; that is to say, without the need for a threshold showing of relevancy and admissibility as is required under the general discovery statute, section 2017.010. Under section 2017.210, a party is entitled to discover the "existence and contents of any agreement under which any insurance carrier may be liable to satisfy in whole or in part a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. This discovery may include the identity of the carrier and the nature and limits of the coverage. A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute."

Plaintiffs argue that the plain language of section 2017.210 authorizes discovery of reinsurance agreements. They point out that the section specifically permits discovery of "any agreement under which any insurance carrier" may be liable to satisfy a judgment "or to indemnify or reimburse for payments made to satisfy the judgment." (§ 2017.210.)

Before examining the controlling language of section 2017.210, it will be helpful to briefly consider some fundamental differences between liability insurance and reinsurance.

■ As defined by statute, "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, § 22.) The purpose of liability insurance is to protect the insured against losses from "contingent or unknown risks of harm." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 17 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

One distinguishing characteristic of liability insurance derives from Insurance Code section 11580, which requires every policy of liability insurance to expressly state that a plaintiff who obtains a judgment against a defendant insured under such a policy is then entitled to bring an action directly against the liability insurer to recover the policy benefits. Section 11580 effectively makes an injured plaintiff who obtains a final judgment against a tort defendant a third party beneficiary of the defendant's liability insurance policy. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68 [131 Cal.Rptr.2d 777].) As a result of the statute, a potential contractual relationship arises between the liability insurer and any third party who might be injured by its insured under the terms of coverage of the liability policy, which the common law in turn has long recognized gives the injured party a "discoverable interest" in the existence and terms of the defendant's liability insurance coverage. (*Superior Ins. Co. v. Superior Court* (1951) 37 Cal.2d 749, 754 [235 P.2d 833]; *Pettie,*

*supra,* 178 Cal.App.2d at pp. 684–688; *Laddon, supra,* 167 Cal.App.2d at p. 395.) Section 11580 does not list reinsurance, or any other form of insurance other than liability insurance, as coming within its purview. (§ 11580, subd. (a).) Nor is there any corresponding California common law rule extending this limited right of discovery to *reinsurance* agreements.[7]

In contrast to liability insurance, "[a] contract of reinsurance is one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance." (Ins. Code, § 620.) "A reinsurance is presumed to be a contract of indemnity against liability, and not merely against damage." (Ins. Code, § 621.) Because a contract of reinsurance is defined by statute as a contract of indemnity made for the benefit of the liability insurer, as a general matter it has no relevance in an underlying tort action brought against an insured under the policy of liability insurance. Indeed, the Insurance Code expressly provides that "[t]he original insured has no interest in a contract of *reinsurance.*" (Ins. Code, § 623, italics added.)

Reinsurance is " 'a special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policy-holder . . . . This excess insurance . . . enables the insurance companies to write more policies than their reserves would otherwise sustain since [it] guarantees the ability to pay a part of all claims. *The reinsurance contract is not with the insured/policyholder.* When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company. The reinsurance company's obligation is to the insurance company, and the insurance company vis-à-vis the reinsurer is thus the insured, or more appropriately, the "reinsured." ' " (*Ascherman v. General Reinsurance Corp.* (1986) 183 Cal.App.3d 307, 311, fn. 5 [228 Cal.Rptr. 1], quoting *Excess & Cas. Reinsurance Ass'n v. Insurance Com'r, etc.* (9th Cir. 1981) 656 F.2d 491, 492.)

---

[7] There are reported cases in which reinsurance agreements themselves were in dispute or were otherwise directly at issue or relevant to the litigation at hand. In such instances, the reinsurance agreements may be discoverable under the general discovery statute within the sound discretion of the trial court. For example, in *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599 [56 Cal.Rptr.2d 341] (*Lipton*), this court approved of the discovery of an insurer's reinsurance information. In that case, however, the discovery was allowed because the insurer was the defendant in a bad faith action, and the reinsurance information was directly relevant to the issues in that proceeding. Discovery was limited to unprivileged communications between the insurer and reinsurer concerning coverage issues and potential liability, and it was deemed authorized under the general relevancy test of former section 2017(a) (now § 2017.010), without reference to former section 2017(b) (now § 2017.210). (*Lipton,* at pp. 1617–1618; cf. *Fireman's Fund Ins. Co. v. Superior Court* (1991) 233 Cal.App.3d 1138, 1141 [286 Cal.Rptr. 50] [refusing to approve discovery of reinsurance information even though reinsurer was direct party to bad faith action].)

■ An essential feature of reinsurance is that it does *not* alter the terms, conditions or provisions of the contract of liability insurance between the direct liability insurer and its insured (the tort defendant). (*Lipton, supra,* 48 Cal.App.4th at p. 1617.) The amounts of policy limits directly available to respond to the underlying judgment are not increased by the existence of reinsurance agreements. In other words, a reinsurance agreement does not answer to liability for the underlying third party tort claim. There is no privity of contract between a reinsurer and the insured under the liability policy or the plaintiff who obtains a final judgment and becomes a judgment creditor under the policy—unless the reinsurer becomes a direct party to a bad faith or similar action. Whereas primary liability insurers have a duty to investigate claims and defend lawsuits tendered to them by their insureds (see *Aerojet-General Corp. v. Transport Indem. Co.* (1997) 17 Cal.4th 38, 57–58 [70 Cal.Rptr.2d 118, 948 P.2d 909]), reinsurers have no comparable duties to investigate or defend claims between third parties and the underlying liability insurers or their insureds, nor do they owe any duty of good faith and fair dealing to the original insureds, unless the reinsurance agreement somehow specifically so provides. (See Ins. Code, §§ 623, 922.2; *American Re-Insurance Co. v. Ins. Com'n, etc.* (C.D.Cal. 1981) 527 F.Supp. 444, 453.)

■ With these distinctions between liability insurance and reinsurance in mind, we turn to plaintiffs' argument that the plain language of section 2017.210 is broad enough to encompass discovery of reinsurance agreements. In seeking to " 'ascertain the Legislature's intent so as to effectuate the purpose of the law' " (*In re J. W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363]), we start with the statutory language. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) " 'If the language [of a statute] is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' " (*Ibid.*)

As noted, section 2017.210 provides, in pertinent part, "A party may obtain discovery of the existence and contents of any agreement under which any insurance carrier may be liable to satisfy in whole or in part a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. This discovery may include the identity of the carrier and the nature and limits of the coverage. A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute. . . ."[8]

---

[8] The language of former section 2017(b) (now § 2017.210) was originally derived from Federal Rules of Civil Procedure, former rule 26(b)(2) (28 U.S.C.), now rule 26(a)(1)(D). (See *Irvington-Moore, Inc. v. Superior Court* (1993) 14 Cal.App.4th 733, 737 [18 Cal.Rptr.2d 49].) A number of federal cases have interpreted former rule 26(b)(2) as permitting discovery of

Reinsurance arguably falls within this language because it is an agreement whereby the reinsurer agrees to "indemnify or reimburse for payments made to satisfy the judgment." (§ 2017.210.) Nonetheless, considering the language of section 2017.210 as a whole, we find the statute ambiguous on the point.

The term "any insurance carrier" in section 2017.210 is qualified by the circumstance that the carrier "may be liable to satisfy in whole or in part a judgment that may be entered in the action." (§ 2017.210.) A liability carrier, as explained, may become contractually liable—both to its insured defendant and to the injured plaintiff who obtains a final judgment against the defendant and thereby becomes a third party beneficiary under the defendant's liability insurance policy—to "satisfy . . . a judgment . . . entered in the action." (*Ibid.*) A reinsurance carrier, on the other hand, is not directly liable to satisfy a judgment entered in the action, and makes no payments to either the insured defendant or the successful plaintiff, although the reinsurer may ultimately make payments to the liability insurer "to indemnify or reimburse for payments made to satisfy the judgment." (*Ibid.*) Put differently, the liability insurer is *directly* liable to satisfy the judgment in the underlying action with respect to the parties, whereas a reinsurer is only derivatively liable to "indemnify or reimburse" (*ibid.*) the liability insurer for payments made in satisfaction of the underlying judgment. We find the statute's use of the terminology "satisfy the judgment" (*ibid.*) ambiguous in this regard.

 There is further ambiguity created by the statutory language of section 2017.210 to the extent it provides, "A party may also obtain discovery as to

reinsurance information, but most of the discovery orders appear to have been made in cases involving bad faith claims or declaratory relief actions, where the reinsurer was itself a party, or the reinsurance agreement was directly relevant to the parties' claims or defenses in the litigation. (See, e.g., *Tardiff v. Knox County* (D.Me. 2004) 224 F.R.D. 522, 523–524 [defendant county in self-funded risk management pool that obtained reinsurance]; *Great Lakes Dredge & Dock v. Commercial Union Assur.* (N.D.Ill. 1995) 159 F.R.D. 502, 503 [existence of reinsurance agreements relevant to bad faith claim]; *Potomac Elec. Power v. California Union Ins.* (D.D.C. 1990) 136 F.R.D. 1, 2 [coverage action by insured against insurers for cleanup and defense costs]; *Nat. Union Fire Ins. v. Continental Illinois Corp.* (N.D.Ill. 1987) 116 F.R.D. 78, 83–84 [communications between insurer and reinsurer, and reinsurance agreements, relevant in suit by insurer to rescind policies based on claims of misrepresentations by its insured].)

Federal Rules of Civil Procedure, former rule 26(b)(2) has itself been characterized by one leading authority as a rule intended to provide "explicit recognition of the discoverability of *liability insurance* information." (See 3 Hogan, Modern Cal. Discovery (4th ed. 1988) Proposed Civil Discovery Act of 1986, appen. D, p. 182, italics added.) The annotated advisory committee notes on the amendment of former rule 26(b)(2) likewise reflect that the rule was enacted to address the discoverability of "defendant's *liability insurance* coverage." (Advisory com. note, Fed. Rules Civ. Proc., foll. rule 26(b)(2) (28 U.S.C.), italics added.) In any case, for purposes of construing California discovery law, we note the common law rule leading to codification of the California discovery statute *predated* codification of former rule 26(b)(2). Federal discovery law neither controls the matter before us nor undermines our analysis of the history and legislative intent behind former section 2017(b) (now § 2017.210).

whether *that insurance carrier* is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute." (Italics added.) The only insurance carrier in a position to dispute its "[insurance] agreement's coverage of the claim involved in the action" (*ibid.*) is the *liability insurance carrier* that issued a policy or policies of liability insurance intended to provide third party liability coverage to the insured defendant. (Ins. Code, § 22; *Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th at p. 17.) Reinsurance contracts and agreements, in contrast, do not serve that function—they are defined by statute as contracts of indemnity made for the benefit of the direct insurer (Ins. Code, § 621), and in which "[t]he original insured [i.e., the tort plaintiff] has no interest." (Ins. Code, § 623.) Hence, to the extent the term "that insurance carrier" in the quoted passage refers to the same "insurance carrier" referenced elsewhere in the language of section 2017.210, all such references must be to *liability insurance carriers.* " ' "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.]' " (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)

In sum, section 2017.210 neither expressly includes nor expressly excludes reinsurance agreements. Moreover, the statutory language is ambiguous because it leaves unclear whether the section is intended to authorize only discovery of liability insurance coverage. "To the extent a statutory text is susceptible of more than one reasonable interpretation, we will consider ' "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977, quoting *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 929 [22 Cal.Rptr.3d 530, 102 P.3d 915], fn. omitted.) Accordingly, we turn to the legislative history of section 2017.210 to assist us in ascertaining the Legislature's intent.

The text of section 2017.210 was originally enacted as part of the Civil Discovery Act of 1986. (Former § 2016 et seq.) The committee analyses of the 1986 Civil Discovery Act uniformly reflect an intent to authorize limited discovery of *liability insurance* coverage, but evince no similar intent with respect to a nonparty insurer's reinsurance agreements. (See Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 169 (1985–1986 Reg. Sess.) as amended Aug. 25, 1986, p. 1 [The bill "would generally permit discovery of any unprivileged matter relevant to the subject matter of the action. It would specifically permit discovery of *liability insurance* without expressly precluding discovery of the application for insurance," italics added]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 169 (1985–1986

Reg. Sess.) as amended July 7, 1986, p. 2 [same]; Assem. 3d reading analysis of Assem. Bill No. 169 (1985–1986 Reg. Sess.) as amended Jan. 8, 1986, p. 1 [same]; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 169 (1985–1986 Reg. Sess.) as amended Jan. 8, 1986, p. 1 [same].)

 "Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result. [Citation.]' (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596].) This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. (*Harris* [*v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142,] 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873].) Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Fields v. Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].)" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291 [48 Cal.Rptr.3d 183, 141 P.3d 288].)

The legislative history, context, and purpose of section 2017.210 all suggest the section was specifically intended to authorize limited discovery of a defendant's *liability insurance* coverage. Such was the rule at the time section 2017.210's predecessor, former section 2017(b), was adopted. Under the common law, plaintiffs were afforded limited discovery of a defendant's liability insurance coverage as a result of a plaintiff's right, under Insurance Code section 11580, to proceed directly against the liability insurer as a judgment creditor to satisfy his or her judgment. (*Superior Ins. Co. v. Superior Court, supra,* 37 Cal.2d at p. 754; see also *Pettie, supra,* 178 Cal.App.2d at pp. 684–688; *Laddon, supra,* 167 Cal.App.2d at p. 395.)

 "As a general rule, '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." ' " ' " (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323].) Nothing in the language or legislative history of former section 2017(b) (now § 2017.210) discloses an intention to extend the scope of the limited discovery right beyond primary liability insurance policies to reinsurance agreements.

The availability and extent of a defendant's liability insurance coverage is important information that plaintiffs are clearly entitled to discover under section 2017.210. "The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial." (*Pettie, supra,* 178 Cal.App.2d at p. 689.) A nonparty insurer's reinsurance information, in contrast, would not be of any relevance to plaintiffs in the vast majority of cases. As we have explained, an essential feature of the reinsurance contract is that it does *not* alter the terms, conditions or provisions of the contract of liability insurance between the direct liability insurer and its insured. (*Lipton, supra,* 48 Cal.App.4th at p. 1617.) The amounts of liability insurance policy limits directly available to respond to the underlying judgment are not increased by the existence of a liability insurer's reinsurance agreements.

Permitting discovery of nonparty insurers' reinsurance agreements as a matter of course under section 2017.210 could also lead to burdensome discovery requests directed at entities that are not even parties to the litigation. Amici curiae Certain Underwriters at Lloyd's, London, and Certain London Market Insurance and Reinsurance Companies, explain that they have a direct interest in the outcome of this litigation insofar as certain of their members are reinsurers of petitioner Catholic Relief Insurance Company. They urge that, "If [section 2017.210] allows any plaintiff in a tort action to obtain not only insurance policies but also any and all reinsurance and retrocessional reinsurance [i.e., second level reinsurance contracts], the burden on nonparty insurers would be enormous. . . . With respect to risks subscribed to by London Market Insurers . . . , locating and producing every reinsurance and retrocessional reinsurance agreement for hundreds of syndicates in any tort action would be an incredible burden to place even on a party, much less a nonparty. [¶] . . . Each syndicate may have a number of reinsurances and each reinsurance may have multiple subscribers." It seems highly unlikely the Legislature intended such a result. As this court has observed, " ' "It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

The language of section 2017.210 allows for discovery of the "existence and contents" of liability insurance policies that may be available to satisfy a judgment, *not* the assets of the insurance companies providing the insurance. Reinsurance is an asset of a liability insurer, just as capital reserves are, and nothing in prior case law, legislative history, or the statutory language suggests that either the common law right to discover insurance

information or section 2017.210 authorizes broad discovery of the financial health of the liability insurer or its ability to meet its contractual obligations under its policies.

We acknowledge there may be limited circumstances under which a liability insurer's reinsurance agreements will be directly on the risk to satisfy a judgment in an underlying tort action in the same way as the defendant's liability insurance coverage itself. One example is when a liability insurer is "fronting" for a reinsurer who is the de facto primary insurer. (See *Venetsanos v. Zucker, Facher & Zucker* (1994) 271 N.J. Super. 459 [638 A.2d 1333].)[9] Here, however, plaintiffs have not made a credible claim that a fronting arrangement exists. Although insurance industry data that is public information reflects that petitioner Catholic Relief Insurance Company utilizes reinsurance agreements to manage its risks, there is no indication in the record that it has ceded control to its reinsurers of its functions as a primary liability insurer, including the investigation and settlement of claims under policies it has issued, and plaintiffs do not appear to contend otherwise. In those unusual circumstances in which a reinsurance agreement is functioning in the same way as a liability policy (fronting arrangement), or where the reinsurance agreement is itself the subject matter of the litigation at hand (e.g., coverage action between the liability insurer and its reinsurer), discovery of such agreements would be appropriate. In this matter, however, there is no evidence that any reinsurance agreements for which pretrial discovery was being sought fall within those narrow exceptions.

██ In compliance with the case management order, defendant Church furnished plaintiffs with copies of its liability insurance policies issued by petitioners, as required by section 2017.210. The statute did not further require petitioners, as the Church's nonparty liability insurer and its corporate parent, to furnish plaintiffs additional discovery of all reinsurance agreements entered into by petitioners with nonparty reinsurers.

## CONCLUSION

The judgment of the Court of Appeal is affirmed, and the matter remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Chin, J., and Moreno, J., concurred.

---

[9] "In a fronting arrangement—a well-established and perfectly legal scheme—policies are issued by a state licensed insurance company and then immediately reinsured 100 percent of their face value by the out-of-state unlicensed insurer." (*Reliance Ins. Co. v. Shriver, Inc.* (7th Cir. 2000) 224 F.3d 641, 643, quoted in Ostrager & Newman, Handbook on Insurance Coverage Disputes (13th ed. 2006) § 15.02[c], p. 1067.) Under such arrangements, the reinsurer is typically the de facto insurer, investigating claims and making settlement decisions. (See, e.g., *Venetsanos v. Zucker, Facher & Zucker, supra*, 638 A.2d at p. 1335.)

**CORRIGAN, J.,** Dissenting.—I respectfully dissent. Code of Civil Procedure section 2017.210 unambiguously provides for discovery of reinsurance policies, by including "any agreement under which any insurance carrier may be liable to . . . indemnify or reimburse for payments made to satisfy the judgment."[1] The majority detects an ambiguity in the "satisfy the judgment" term, because a reinsurer is "derivatively" rather than "directly" liable. (Maj. opn., *ante*, at p. 370.) However, the Legislature has chosen terminology that expressly includes derivative liability. The obligation to "indemnify or reimburse" easily encompasses the duty assumed by reinsurers.

The majority finds further ambiguity in the third sentence of section 2017.210: " 'A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute.' " According to the majority, only the defendant's liability insurer is in a position to dispute coverage. (Maj. opn., *ante*, at p. 369.) This is not the case; reinsurers can and do argue that their policies do not cover the claim involved in the action. (See, e.g., *Royal Ins. Co. v. Caledonian Ins. Co.* (1920) 182 Cal. 219, 224–226 [187 P. 748]; *Fireman's Fund Ins. Co. v. Aachen & Munich Fire Ins. Co.* (1906) 2 Cal.App. 690, 694–695 [84 P. 253]; *Travelers Cas. & Sur. v. Gerling Global Reinsur.* (2d Cir. 2005) 419 F.3d 181, 193–194; *Nat. American Ins. Co. of Cal. v. Underwriters* (9th Cir. 1996) 93 F.3d 529, 536–537.) And as a matter of logic, the additional statutory authorization for discovery of coverage disputes does not make the broad terms of the section 2017.210's opening sentence ambiguous. "[A]ny agreement under which any insurance carrier may be liable" includes reinsurance, whether or not coverage is contested.

Given the clarity of the statutory language, there is no need to resort to indications of legislative intent. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) We may not rewrite the statute to make it conform to an intent that is not expressed in its terms. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; *Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365–366 [5 P.2d 882].) In any event, the majority's reliance on committee analyses reflecting an intent to authorize discovery of liability insurance is not persuasive. As the majority recognizes, reinsurance is presumptively a form of liability insurance. (Maj. opn., *ante*, at p. 368; Ins. Code, § 621; Staring, *The Law of Reinsurance Contracts in California in Relation to Anglo-American Common Law* (1988) 23 U.S.F. Law Rev. 1, 4–5.) What is clear from the legislative history, and from the language of the statute, is that the terms before us were framed on the example of rule

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

26 of the Federal Rules of Civil Procedure (28 U.S.C.).[2] (See *Irvington-Moore, Inc. v. Superior Court* (1993) 14 Cal.App.4th 733, 737 [18 Cal.Rptr.2d 49].) The Legislature might have drawn instead on the rule developed by California case law, based on the right of direct action conferred by Insurance Code section 11580. However, it did not.

The federal rule has been interpreted to require disclosure of reinsurance policies. Discovery has not been limited to cases "where the reinsurer was itself a party, or the reinsurance agreement was directly relevant to the parties' claims or defenses in the litigation." (Maj. opn., *ante,* at p. 370, fn. 8.) In *Great Lakes Dredge & Dock v. Commercial Union Assur.* (N.D.Ill. 1995) 159 F.R.D. 502, the court determined that the reinsurance documents sought by the plaintiffs were irrelevant, but nevertheless ordered the insurer to disclose its reinsurance policies under rule 26. (*Great Lakes, supra,* 159 F.R.D. at p. 504.)

In *Tardiff v. Knox County* (D.Me. 2004) 224 F.R.D. 522, reinsurance was not relevant to any issue in the underlying litigation; discovery was permitted simply because "the reinsurers are exposed to potential liability for reimbursing the [self-insurance] Pool when judgment is entered against the Pool's member [i.e., the defendant County]." (*Id.* at p. 524.) The *Tardiff* court adopted the following language from *Nat. Union Fire Ins. v. Continental Illinois Corp.* (N.D.Ill. 1987) 116 F.R.D. 78, which has been widely accepted by the federal courts: "Reinsurers ('person[s] carrying on an insurance business') are Insurers' own insurers. If Insurers are held liable under the Policies, they will turn to their reinsurers for partial indemnification, as provided in the reinsurance agreements, for any 'payments made to satisfy the judgment.' [Fn. omitted.] [¶] Insurers contend their reinsurance agreements are not 'insurance agreements' under [former] Rule 26(b)(2).[3] True enough, reinsurance agreements are a special breed of insurance policy. . . . [¶] But the English language remains the same: Reinsurers 'carry[] on an insurance business' and 'may be liable . . . to indemnify [Insurers] for payments made to satisfy the judgment' that Movants hope to obtain. [Former] Rule 26(b)(2) does not require that a party's insurer be directly liable to the other party. It is totally irrelevant that the reinsurers would pay Insurers and not the defendants and that Movants cannot directly sue the reinsurers." (*National Union, supra,* 116 F.R.D. at p. 84; see *Tardiff, supra,* 224 F.R.D. at pp. 523–524.)

---

[2] Further references to enumerated rules are to the Federal Rules of Civil Procedure. Rule 26(a)(1)(D) mandates the disclosure of "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

[3] The terms quoted by the *National Union* court are now found in rule 26(a)(1)(D). (See fn. 2, *ante.*)

Discovery of reinsurance policies is a routine matter in federal court. (E.g., *Ohio Management, LLC v. James River Ins. Co.* (E.D.La.) 2006 WL 1985962, *2; *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.* (N.D. Ohio) 2006 WL 355289, *1–2; *Country Life Ins. Co. v. St. Paul Lines Ins. Co.* (C.D.Ill.) 2005 WL 3690565, *9–10; *Medmarc Cas. Ins. Co. v. Arrow Internat'l Inc.* (E.D.Pa.) 2002 WL 1870452, *3; *Missouri Pac. R.R. Co. v. Aetna Cas. & Surety Co.* (N.D.Tex) 1995 WL 861147, *2; *FDIC v. Marsiglia* (E.D.La.) 1992 WL 300830, *1; *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.* (E.D.Pa.) 1991 WL 237636, *2; *Potomac Elec. Power v. California Union Ins.* (D.D.C. 1990) 136 F.R.D. 1, 2.) The cases reflect no judicial concern over any resulting burden on nonparty reinsurers. Thus, the majority's suggestion that allowing discovery of reinsurance would lead to abuse and absurdity seems not to have been borne out by experience.[4] (Maj. opn., *ante*, at pp. 373–374.) While any discovery process is susceptible to abuse, a protective order is the answer provided by statute. (§ 2017.020.)

I agree with the majority that section 2017.210 does not "authorize[] broad discovery of the financial health of the liability insurer or its ability to meet its contractual obligations under its policies." (Maj. opn., *ante*, at p. 374.) The statute permits only limited discovery of "the existence and contents" of an insurance policy, including "the nature and limits of the coverage." (§ 2017.210.) No general exposure of insurers' assets is at issue. Reinsurance is a unique kind of asset; it is not fungible, and is designed solely to respond to liability. (Cf. *Pettie v. Superior Court* (1960) 178 Cal.App.2d 680, 689–690 [3 Cal.Rptr. 267].) Most importantly, it is expressly included by the terms of section 2017.210. An insurer that chooses to back up its policies with a discoverable asset is in no position to complain about disclosure.

The majority creates an exception for discovery of reinsurance agreements that are "directly on the risk to satisfy a judgment." (Maj. opn., *ante*, at p. 374.) In such a case, the majority acknowledges that discovery of the policy "would be appropriate." (*Id.* at p. 374.)[5] No statutory authority is offered for this exception. Nor is there any need for it; the discovery statutes

---

[4] Here, there can be little doubt that petitioners have, for their own purposes, marshalled the reinsurance available to meet the church's potentially massive liability in the molestation litigation. Moreover, Catholic Relief Insurance Company, like any insurer, must make detailed disclosures of its reinsurance policies to the Insurance Commissioner in order to claim those policies as assets. (Ins. Code, § 922.1 et seq.) Complying with plaintiffs' request for discovery of the church's reinsurance policies would not appear to be unduly burdensome.

[5] The majority also recognizes a "narrow exception[]" permitting discovery of a reinsurance policy that is the subject matter of the litigation, as in a coverage dispute between a liability insurer and its reinsurer. (Maj. opn., *ante*, at p. 374.) However, no exception is required in this circumstance; any policy that is "relevant to the subject matter involved in the pending action" is discoverable as a matter of right under section 2017.010, without resort to the provisions of section 2017.210.

should simply be applied as they are written. Reinsurance is plainly discoverable under section 2017.210. If the insurer objects, it may seek a protective order under section 2017.020.

Kennard, J., and Werdegar, J., concurred.