[No. G038349. Fourth Dist., Div. Three. Apr. 25, 2008.]

THE STATE OF CALIFORNIA ex rel. DENNIS DOCKSTADER et al., Plaintiffs and Appellants, v.
BETH HAMBY et al., Defendants and Respondents.

## COUNSEL

Walsworth, Franklin, Bevins & McCall, Ferdie F. Franklin, John S. Murray, Lisa M. Rice and Cyrus C. Chen for Plaintiffs and Appellants.

Orbach, Huff & Suarez, David M. Huff, Colin E. Barr and Marley S. Fox for Defendants and Respondents.

## OPINION

**ARONSON, J.**—Qui tam plaintiffs Dennis Dockstader and Christopher Dockstader challenge the dismissal of their lawsuit following the trial court's order sustaining without leave to amend the demurrers of defendants Beth Hamby, Lynn M. Roberts, and Julie Crum. Plaintiffs brought the lawsuit under California's False Claims Act (CFCA) (Gov. Code, § 12650 et seq.),[1] seeking to recover funds on behalf of the State of California. Plaintiffs allege

---

[1] All statutory references are to the Government Code unless otherwise noted.

defendants, while acting as employees of the Los Angeles Unified School District (LAUSD), submitted false requests to the state seeking funding for new school construction. Plaintiffs acknowledge they may not bring a qui tam suit against LAUSD directly, but contend the LAUSD employees involved are fair game.

We conclude the employees of a public agency, acting in the course and scope of their employment, and solely on the agency's behalf, are not proper defendants under CFCA. In *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 [48 Cal.Rptr.3d 108, 141 P.3d 225] (*Wells*), the Supreme Court determined the Legislature did not intend a public school district to be a "person" subject to suit under CFCA, in part because of the devastating impact these lawsuits would have upon education in the state. Because section 825 requires a government agency, on timely request, to defend and indemnify a public employee against claims arising out of an act or omission occurring within the scope of his or her employment, a suit against defendants is tantamount to a suit against LAUSD itself. We conclude the Legislature did not intend to allow a plaintiff to circumvent its intent to exempt public entities from CFCA liability simply through a pleading device. Accordingly, the trial court did not err in sustaining defendants' demurrer without leave to amend, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs originally sued LAUSD under CFCA as qui tam plaintiffs on behalf of the State of California to recover approximately $100 million that plaintiffs contend LAUSD wrongfully obtained from the state for new school construction. These funds were available under the Leroy F. Greene School Facilities Act of 1998 (Ed. Code, § 17070.10 et seq.), which permits school districts to submit applications for new facilities based on need and following criteria established by the State Allocation Board. Plaintiffs alleged LAUSD submitted funding requests that deliberately understated the number of classrooms LAUSD had available for general student use and overstated the number of students anticipated to attend particular schools. As required under CFCA, plaintiffs filed their complaint under seal and sent a copy to the California Attorney General's office. The Attorney General, however, declined to intervene in the action.

After plaintiffs filed their complaint, the California Supreme Court issued its decision in *Wells*, holding a school district was not a "person" under CFCA, and therefore could not be sued under the act. In response to *Wells*, plaintiffs filed their second amended complaint, which deleted LAUSD as a

defendant and added the current individual defendants. The second amended complaint alleges defendants knowingly signed fraudulent funding applications in the course and scope of their employment as LAUSD officials. The trial court sustained defendants' demurrer to the second amended complaint, concluding CFCA did not authorize a lawsuit against defendants for acts taken in their official capacities. The parties stipulated to dismiss plaintiffs' second amended complaint with prejudice. Plaintiffs now appeal.

## II

### DISCUSSION

■ "The CFCA, which is patterned after a similar federal law, was adopted in 1987. [Citation.] It provides that '[a]ny person' who, among other things, '[k]nowingly presents or causes to be presented to . . . the state or . . . any political subdivision thereof, a false claim for payment or approval,' or '[k]nowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision,' or '[c]onspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or any political subdivision,' or '[i]s a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery [thereof],' 'shall be liable to the state or to the political subdivision for three times the amount of damages' the state or political subdivision thereby sustained, as well as for the state's or political subdivision's costs of suit, and may also [be] liable for a civil penalty of up to $10,000 for each false claim." (*Wells, supra,* 39 Cal.4th at p. 1187, quoting § 12651, subd. (a)(1)–(3), (8).)

■ If the false claim garnered state funds, the state Attorney General may sue to recover damages and penalties. A qui tam plaintiff also may initiate a CFCA action to recover state funds on behalf of the state. (§ 12652, subd. (c)(1), (3).) A qui tam plaintiff must file the CFCA complaint in camera, which remains under seal for up to 60 days. During this time, the plaintiff may not serve the complaint on the defendant. (§ 12652, subd. (c)(2).) The qui tam plaintiff also must immediately notify the Attorney General of the suit and disclose all material evidence and information in the plaintiff's possession. Within the 60-day period the complaint is under seal, the Attorney General may elect to intervene and proceed with the action. If the Attorney General declines to proceed, the qui tam plaintiff may conduct the action (§ 12652, subd. (c)(4)–(8)) and, subject to exceptions not relevant here, is entitled to "receive an amount that the court decides is reasonable for collecting the civil penalty and damages on behalf of the government. The

amount shall be not less than 25 percent and not more than 50 percent of the proceeds of the action or settlement and shall be paid out of these proceeds." (§ 12652, subd. (g)(3).) CFCA authorizes a lawsuit against a "person" who submits a false claim, and entitles a "person" to act as a qui tam plaintiff. (§ 12652, subds. (a), (c).) CFCA defines "person" to include "any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust." (§ 12650, subd. (b)(5).)

In *Wells*, the Supreme Court considered whether CFCA's definition of "person" included public school districts. The court began its analysis with the plain language of the statute, noting "the statutory list of 'persons' contains no words or phrases most commonly used to signify public school districts, or, for that matter, any other public entities or governmental agencies." (*Wells, supra*, 39 Cal.4th at p. 1190.) The court recognized that, in contrast to section 12650, other provisions of CFCA made specific reference to government agencies. (*Wells*, at p. 1190.) In examining other statutory schemes where the Legislature intended to exclude public entities from suit, the court found the Legislature defined "persons" in language similar to that in CFCA. Conversely, when the Legislature intended to include public entities, it had done so expressly in the language of the statute. (39 Cal.4th at pp. 1190–1191, citing § 12900 et seq.)

The court next turned to CFCA's legislative history. Although the act's history provided no explicit discussion regarding the scope of the term "persons," an earlier version of the bill that later became CFCA included a definition of "persons" that expressly included the terms " '*district, county, city and county, city, the state, and any of the agencies and political subdivisions of these entities*.' " (*Wells, supra*, 39 Cal.4th at p. 1191, original italics.) The court deemed the Legislature's removal of these terms before CFCA's enactment a significant indication of the Legislature's intent to exclude public entities. (39 Cal.4th at p. 1192.)

The court next noted the "traditional rule of statutory construction . . . that, absent express words to the contrary, governmental agencies are not included within the general words of a statute." (*Wells, supra*, 39 Cal.4th at p. 1192.) The court acknowledged a more recent exception to this rule, "that government agencies are excluded from the operation of general statutory provisions 'only if their inclusion would result in an infringement upon sovereign governmental powers. . . . Pursuant to this principle, governmental agencies have been held subject to legislation which, by its terms, applies simply to any "person." [Citations.]' [Citations.]" (*Ibid.*) The court concluded the exception did not apply to CFCA lawsuits for two reasons. First, courts employ the rule and exception as a maxim of statutory construction only where the legislative intent is unclear. Because the court determined CFCA's

language, structure, and history "strongly suggest" public entities are not "persons" subject to suit, resort to the maxim was unnecessary. (39 Cal.4th at p. 1193.)

■ Second, the court rejected the notion that holding school districts liable under CFCA would not infringe on the state's sovereign powers. The court noted that holding school districts liable under CFCA "would interfere with the state's plenary power and duty, exercised at the local level by the individual districts, to provide the free public education mandated by the Constitution." (*Wells, supra,* 39 Cal.4th at p. 1193.) The court recognized that through the initiative enacting California Constitution, article XIII A, the people of the state put all government agencies, including school districts, "on a strict fiscal diet." (*Wells,* at p. 1194.) Yet, "[i]f found liable under the CFCA, school districts, like other CFCA defendants, could face judgments—payable from their limited funds—of at least *two,* and usually *three,* times the damage caused by each false submission, *plus* civil penalties of up to $10,000 for each false claim, plus costs of suit. Such exposure, disproportionate to the harm caused to the treasury, could jeopardize a district financially for years to come. It would injure the districts' blameless students far more than it would benefit the public fisc, or even the hard-pressed taxpayers who finance public education." (*Id.* at p. 1195.) The court therefore concluded that such a diversion of public funds "into the pockets of outside parties . . . would interfere significantly with government agencies' fiscal ability to carry out their public missions." (*Id.* at pp. 1195–1196.) Based on the foregoing points, the Supreme Court in *Wells* concluded that public school districts were not "persons" subject to suit under CFCA. (39 Cal.4th at pp. 1196–1197.)

Plaintiffs contend defendant school district employees are "persons" under CFCA because the statutory definition expressly includes "any natural person." (§ 12650, subd. (b)(5).) According to plaintiffs, we may not consider CFCA's context or purpose because the phrase "any natural person" is unambiguous and therefore must be interpreted literally. We do not find this argument persuasive.

■ " '[T]he meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context . . . .' [Citation.]" (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 294 [64 Cal.Rptr.3d 661, 165 P.3d 462]; see also *People v. Braxton* (2004) 34 Cal.4th 798, 810 [22 Cal.Rptr.3d 46, 101 P.3d 994].)[2] Thus, words or phrases unambiguous on their face may

---

[2] Interpreting statutes literally, without regard to statutory context, may undermine or frustrate legislative intent. "The idea that semantically unambiguous sentences—sentences clear 'on their face'—sentences whose meaning is 'plain'—can be interpreted without reference to purpose inferred from context is fallacious. Take that clearest of directives: 'Keep off

nonetheless prove to be ambiguous when considered with the statute's surrounding words. (See *Catholic Mutual Relief Society v. Superior Court* (2007) 42 Cal.4th 358, 370 [64 Cal.Rptr.3d 434, 165 P.3d 154].) In analyzing CFCA's definition of the word, "persons," the Supreme Court in *Wells* discerned the Legislature's intent to purposely exclude public entities as defendants, observing that "the only words and phrases it uses are those most commonly associated with *private individuals* and entities." (*Wells, supra,* 39 Cal.4th at p. 1190, italics added.) Given this context, we cannot say that CFCA's use of the phrase "any natural person" would unambiguously refer to a public employee acting solely in his or her official capacity.

■ If a statute's language permits more than one reasonable interpretation, we may consider " 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

The Supreme Court in *Wells* fully considered these extrinsic aids in determining the Legislature intended to ban CFCA suits against public school districts. As defendants note, a public entity always acts through individuals. Thus, interpreting "persons" to allow suit against the specific individuals who signed or submitted funding requests on behalf of a public school district would allow plaintiffs in every instance to simply plead around the Legislature's ban. This would affect the school district in largely the same manner as if it had been sued directly.

Specifically, section 825, subdivision (a) provides, in relevant part: "Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, *the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or*

---

the grass.' Read literally it forbids the groundskeeper to mow the grass. No one would read it literally." (*Marozsan v. U.S.* (7th Cir. 1988) 852 F.2d 1469, 1482 (conc. opn. of Posner, J.).)

*action to which the public entity has agreed.*" (Italics added.) While acknowledging the foregoing provision, plaintiffs point out that section 825, subdivision (a), also provides: "Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages." Accordingly, plaintiffs argue LAUSD "would be liable for little more than paying back its ill-gotten gain."

█ Plaintiffs' reasoning is flawed. First, section 825's bar on the public entities paying the punitive damage portion of a judgment is not absolute. Section 825, subdivision (b) provides: "Notwithstanding subdivision (a) or any other provision of law, a public entity is authorized to pay that part of a judgment that is for punitive or exemplary damages if the governing body of that public entity, acting in its sole discretion except in cases involving an entity of the state government, finds all of the following: [¶] (1) The judgment is based on an act or omission of an employee or former employee acting within the course and scope of his or her employment as an employee of the public entity. [¶] (2) At the time of the act giving rise to the liability, the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent best interests of the public entity. [¶] (3) Payment of the claim or judgment would be in the best interests of the public entity."

Second, it is far from clear the treble damages under CFCA constitute punitive damages. As the Supreme Court noted in *Wells*: "One might argue that the CFCA's treble-damage provisions are not strictly, or even primarily, 'punitive,' in that they are necessary to ensure both (1) full recovery by the state or political subdivision against which the false claim was made and (2) due compensation to the party who undertook the false claim action on behalf of the defrauded entity." (*Wells, supra,* 39 Cal.4th at p. 1196, fn. 20.) Here, plaintiffs contend LAUSD wrongfully obtained almost $100 million in state funds. If plaintiffs prevail against the individual defendants and it is later determined that CFCA treble damages are not punitive in nature, LAUSD could face a $300 million judgment. It cannot be credibly argued that such a judgment would not have a staggering impact on the district's ability to serve its students.

Even if LAUSD had to simply return the money allegedly obtained wrongfully, the effect of such a large judgment could have devastating consequences for the district. Plaintiffs do not contend LAUSD failed to spend the state money it obtained for new classrooms. Thus, LAUSD would have to find ways to raise the money necessary to pay the judgment, which would undoubtedly impair its ability to serve its students. Moreover, not all of the money recovered from LAUSD would be returned to the state for redistribution to other school districts. As noted above, in situations where, as

here, the Attorney General does not intervene, the plaintiff is entitled to a minimum of 25 percent of the recovery, up to a maximum of 50 percent. Allowing private individuals to siphon off substantial funds from the limited school funding available in the state would undermine the Legislature's intent to shield public entities from CFCA damage awards.

■ In the context of a sovereign immunity case, the United States Supreme Court in *Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 71 [105 L.Ed.2d 45, 109 S.Ct. 2304], observed: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [Citation.] As such, it is no different from a suit against the State itself. [Citation.] We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device." Although stated in a different context, the foregoing observation applies with equal force here. Simply allowing plaintiffs to substitute the individual LAUSD employees for the district itself amounts to little more than a pleading device that seeks to circumvent the Legislature's intent to shield public entities from the draconian effects of CFCA.

Our holding is bolstered by the Supreme Court's decision in *State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220 [48 Cal.Rptr.3d 144, 141 P.3d 256] (*Harris*), a companion case to *Wells*. In *Harris*, the court determined that a city was not a proper plaintiff in a CFCA action that did not involve the city's funds. In reaching this conclusion, the court recognized that CFCA expressly authorizes the Attorney General to pursue recovery where state funds alone, or the funds of the state and a political subdivision, were wrongfully taken. But, as the court noted, "the Attorney General, *acting in his official capacity*, is not authorized to sue to recover exclusively political subdivision funds." (39 Cal.4th at pp. 1227–1228, italics added & omitted.) Similarly, CFCA authorizes the prosecuting authority of a local agency to pursue recovery only where its own political subdivision funds are at issue, or where both its own and state funds are at issue. (39 Cal.4th at pp. 1227–1228.)

■ Recognizing these limitations, the city plaintiff in *Harris* nonetheless argued "it may proceed through [its city officers] on the state's behalf simply as a 'person' eligible to sue under the statute's 'qui tam' provision." (*Harris, supra*, 39 Cal.4th at p. 1229.) Rejecting this argument, the court relied in large part on its analysis in *Wells*, noting: "Absent contrary indications, we assume the Legislature intended the same meaning of 'person' to delineate both who *may be sued* under the statute, and who *may sue under its qui tam provision*." (*Harris, supra*, 39 Cal.4th at p. 1229, original italics.)

■ Thus, the Supreme Court in *Harris* held (1) CFCA's definition of "person" delineates who qualifies as a plaintiff or defendant under CFCA, and (2) a public official acting in his or her official capacity is not a "person" for purposes of prosecuting an action under CFCA. Given these rulings, it follows that the Supreme Court would also hold that a public official may not be a proper defendant under CFCA for acts taken in his or her official capacity. Accordingly, we conclude the trial court did not err in sustaining defendants' demurrers without leave to amend.

## III

### DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs of this appeal.

O'Leary, Acting P. J., and Ikola, J., concurred.